## CLARK v. ERIE R. CO.

(District Court, N. D. New York. February 12, 1916.)

1. MASTER AND SERVANT ⊕⇒129(6) — LIABILITY FOR INJURIES — PROXIMATE CAUSE.

The absence of an automatic coupler from a railroad car used in interstate commerce, or the use of a defective automatic coupler, gives rise to no cause of action in favor of an injured employé, unless it occasions or contributes to the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 262; Dec. Dig. ⊕⇒129(6).]

2. APPEAL AND ERROR ⊕⇒1033(5)—ERROR FAVORABLE—INSTRUCTIONS.

Employers' Liability Act April 22, 1908, c. 149, § 3, 35 Stat. 66 (Comp. St. 1913, § 8659), provides that contributory negligence shall not bar a recovery, but that the damages shall be diminished in proportion to the amount of negligence attributable to such employé, provided that no such employé shall be held to have been guilty of contributory negligence where the violation by the carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé. Plaintiff was a member of crew engaged in switching and moving cars in interstate commerce. When an engine was brought in contact with some standing cars in an effort to couple thereto they failed to couple, and after the engine had moved away some distance plaintiff went between the engine and the cars to make the coupling work, and was injured when the cars, either from their own weight or from another cause, ran down on the engine. There was a slight grade at that point, of which plaintiff may have known, and it appeared that he did not block the cars before making his effort to make the coupling work. He alleged, and the jury found on sufficient evidence, that the coupler was defective, or so out of repair that it did not work at all times, and did not work or operate at the time in question. The court submitted the question of contributory negligence, and charged that plaintiff was not chargeable with contributory negligence in merely going between the engine and the cars to make the coupler operate, but was chargeable with such negligence if, after going between them, he failed to exercise ordinary care for his own safety, and that if the coupler was out of repair and defective, and the proximate cause of the injury, and if plaintiff was guilty of negligence contributing to the injury, then such negligence, though not an absolute defense, would go in diminution of damages. *Held* that, in view of the proviso in the statute, the instructions were more favorable to defendant than it was entitled to, and the submission of the question of contributory negligence, if error, did no harm to defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4056; Dec. Dig. ⊕⇒1033(5); Trial, Cent. Dig. § 587.]

3. MASTER AND SERVANT ⊕⇒226(1)—LIABILITY FOR INJURIES—ASSUMPTION OF RISK.

While, under the Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65, as amended by Act April 5, 1910, c. 143, 36 Stat. 291 [Comp. St. 1913, §§ 8657–8665]), assumption of risk, except in certain cases, has its former effect as a bar to an action by an injured employé, and when the employé knows of a defect in the appliances used by him, and appreciates the danger resulting, and continues in the employment without objection, or without obtaining from the employer an assurance of reparation, he assumes the risk, though it may arise from the employer's breach of duty, this rule had no application where the employer failed in its absolute duty to equip its engine and cars with a workable and suitable automatic coupler.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659, 660; Dec. Dig. ⊕⇒226(1).]

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At law. Action by William Clark against the Erie Railroad Company. On motion to set aside the verdict of the jury and for a new trial. Motion denied.

Vincent N. Elwood, of Hancock, N. Y. (F. W. Welsh, of Binghamton, N. Y., of counsel), for plaintiff.

Lyon & Painter, of Binghamton, N. Y., for defendant.

RAY, District Judge. This action was brought by the plaintiff against the defendant to recover the damages alleged to have been sustained by him while in the employ of the defendant, and while acting as one of the crew of an engine engaged in switching and moving cars in interstate commerce at Deposit, N. Y., by reason of a defective automatic coupler attached to such engine. The action was brought under the provision of the federal Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531, amended by Act April 1, 1896, c. 87, 29 Stat. 85, and Act March 2, 1903, c. 976, 32 Stat. 943 [Comp. St. 1913, §§ 8605–8615]), and also the provisions of federal Employers' Liability Act (35 Stat. 65, c. 149, as amended in 1910).

The plaintiff claimed that a defective automatic coupler was the cause of and contributed to his injury, which consisted in the loss of one hand and a portion of the arm. The evidence was conclusive that the defendant's road is an interstate railroad, and that the cars being moved in the Deposit yards by the engine in question were loaded with interstate freight and had come from some point in western New York into Pennsylvania, and thence into New York, and were bound for some point in New Jersey. While this was befogged all that was possible, the conductor, who at first claimed that he did not know whether or not he had any cars in his train while moving from a point in the state of Pennsylvania to Deposit, N. Y., finally admitted that, after leaving the station in Pennsylvania, no stop was made before reaching Deposit, and that these cars in question were there in the train, with a number of others. It was while these cars were being moved in the Deposit yards by a yard engine that the accident happened. The plaintiff was one of the crew of engine No. 2068, and in the night was attempting to couple the head of such engine to one of such cars, No. 50637. There was an automatic coupler on the engine, and a corresponding one on the car. When the engine and car came in contact, in the effort to couple on, the coupling did not make, as was shown by the fact that, when the engine moved away, the cars did not follow. The engine moved away some distance, and Clark went between the head of the engine and the car and attempted to remedy the defect— make the coupling work—and while so engaged the cars, or one of them, either of its own weight or moved by another engine, ran down on the engine, and the plaintiff's hand was caught in the coupling and crushed, and amputation followed.

It was shown that there was a slight grade in the yard at this point and that the plaintiff *may have known* this fact, and it was also shown that he did not block the cars to which the crew was attempting to couple the engine before making his effort to make the defective coupling work. Every act and move of the plaintiff and of the crew

working with him and of the cars and engine were proved, and the judge allowed the evidence. The whole situation was fully proved, as were the movements of this engine and of these and other cars prior to the accident, as well as what was done with and to the engine and coupler at the time of and immediately following the accident.

There was some evidence in the case tending to show that these automatic couplers will not work and that the engine will not couple to the car readily when on a curve, or unless the engine and car are brought together with sufficient force to cause the coupling to operate. For an automatic coupler to work or operate when in perfect condition it is necessary that, when standing or moving on a straight track, the car and engine be brought together properly. Inasmuch as it was contended that this coupler on the engine was defective or out of repair, so that it would not work at all times when the engine and cars were properly brought together or into contact, and as the coupler itself was not brought into court, but another one was, which, it was contended, was not like the one on the engine at the time of the accident, much evidence was given as to the construction and operation of automatic couplers, and it became an important consideration whether the failure of the engine to couple to the car was due to improper or inadequate movement or action on the part of the ones operating the engine or to defects in the coupler.

The court received all evidence bearing on the question of the alleged contributory negligence of the plaintiff. The plaintiff, as an act of negligence or failure to perform its duty to the plaintiff on the part of defendant, stood on the proposition that the automatic coupler was out of repair and for that reason did not work, and would not operate at all times when coupler, engine, and car were properly moved and handled, and did not on this occasion, and that this was the cause of the accident and consequent injury; that is, the plaintiff contended, finally, that the car and engine were properly brought together, that the coupling failed to work because of its defective condition, that the plaintiff in the performance of his duty went to the coupler on the engine to make it work, the cars being some 15 or 20 feet away, and that while the plaintiff was engaged in the performance of this duty to the defendant railroad company the cars came down on him in the darkness and his hand was crushed. The plaintiff contended that the question of the plaintiff's contributory negligence, if any, was of no importance, not in the case; but the court ruled against him on this question and, after receiving all the evidence as to conditions, etc., held and charged the jury that for the plaintiff to recover the evidence must have established and the jury must find that the coupler was out of repair or defective, and that such condition was the proximate cause of the accident and injury—that is, made it necessary for the plaintiff to go to the coupler, and between the head of the engine and the cars, some 15 or 20 feet away, for the purpose of making the coupler operate, and that while engaged in the performance of this duty the car came upon him and crushed his hand; also, that the plaintiff could not recover if the coupler was not out of repair and defective, or if his own negligence was the cause of the accident and injury; also, that

the plaintiff was not chargeable with contributory negligence, under such circumstances and conditions, if they existed, in merely going between the head of the engine and the cars to make the coupler operate, but was chargeable with contributory negligence if, after going between them, he failed to exercise ordinary care for his own safety; also, that if the coupler was out of repair and defective, and the proximate cause of the accident and injury, and the plaintiff was guilty of negligence contributing to the accident and injury, then such negligence, while not an absolute defense, would go in diminution of damages.

[1] As I understand the law, a defective automatic coupler must be the proximate cause of the injury complained of. The absence of an automatic coupler, or a defective automatic coupler, does not give rise to a cause of action for injury, unless it occasions the injury or contributes to the injury.

[2] The plaintiff in this case relied finally upon a defective automatic coupler as the act of negligence or omission of duty causing his injury, or a contributing cause, and sought to recover on no other ground. The jury was instructed that plaintiff could not recover on any other ground. The jury found that the automatic coupler was defective or out of repair, and that such defect was the proximate cause of the injury. There was evidence to support the finding, and no evidence bearing on this question was excluded. Every fact and circumstance connected with this accident and injury as stated was gone into and proved, and was competent for the purpose of showing whether the accident and injury was due to a defective coupler, or to some negligent act of the plaintiff, or some act of some third person. It is erroneous to assert in this case that the defendant was not permitted to show contributory negligence or give evidence on that subject. The contrary is the truth. But, however that may be, the rulings and charge of the court were much more favorable to the defendant company than it was entitled to.

As stated, the plaintiff relied for his right to recover upon the alleged defective coupler, and the jury on sufficient and competent evidence found it was defective, or so out of repair that it would not work at all times, and did not work or operate at the time in question, and that consequently the plaintiff in the line of his duty went to the head of the engine to make it work, and while so employed was injured by the cars coming down upon him. The injury to this plaintiff was occasioned, as the jury found, by the failure of the defendant railroad company to have this engine equipped with an operative, workable, automatic coupler as required by the Safety Appliance Act. The jury also found that plaintiff was in the employ of the defendant, engaged at the time in moving this engine and these cars in interstate commerce. Consequently the case was and is within both the federal Employers' Liability Act and the federal Safety Appliance Act.

This case is quite similar in its facts and rulings to Grand Trunk Railway Co. v. Lindsay, 233 U. S. 42, 34 Sup. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168 (below 201 Fed. 844, 120 C. C. A. 166), where an engine coupled to four loaded freight cars moving in interstate

commerce was attempting to couple to other loaded cars that the train might be completed and depart. When by impact it was attempted to make the coupling, the cars failed to couple automatically, and the switchman (plaintiff below in that case) walked beside the car as it approached the point of coupling, signaled the engineer to stand fast, and entered between the cars for the purpose of ascertaining and remedying, if possible, the cause of the trouble. While between the cars and engaged in handling the coupler the cars were pushed up, and he was caught and his arm crushed. There was some proof tending to show that the switchman (plaintiff) stepped in before the moving cars had entirely stopped, and some that he gave a signal to come ahead as he stepped in; but there was evidence to the contrary. It was proved that the coupler would not operate because of a bent pin. The court was requested to instruct the jury that if the switchman, as he entered between the cars, gave the signal to come ahead, this was the proximate cause of the injury (an act of negligence), and he could not recover. The court refused, but did charge:

"If after he started to go between the cars he has done something which was carelessly done, or which you can say from a preponderance of the evidence contributed approximately to the accident, then he cannot recover. * * * If there be contributory negligence at all, it depends, not upon his assuming the risk under the circumstances in evidence in this case, but upon the care with which he acted while in the performance of the work which he assumed. You are further instructed that if you believe, from the preponderance of the evidence, that the plaintiff gave a 'come ahead' signal to the switchman or engineer—one or both—and after that went between the cars and was injured, then you have a right to consider whether the giving of the 'come ahead' signal by the plaintiff was the proximate cause of the injury, as distinguished from the condition of the coupler, and if you find that under the circumstances the 'come ahead' signal was the proximate cause of the injury then your verdict must be for the defendant. You are also instructed that where there is a safe and a dangerous way of doing an act, and the servant uses a dangerous way and is injured thereby, he is charged with negligence on his part and may not recover."

It is noted that there, as here, the court made contributory negligence after going between the cars a defense, and contributory negligence a proper consideration in fixing damages. But the Supreme Court (233 U. S. 49, 34 Sup. Ct. 583, 58 L. Ed. 838, Ann. Cas. 1914C, 168) held:

"But having regard to the state of the proof as to the defect in the coupling mechanism, its failure to automatically work by impact after several efforts to bring about that result, all of which preceded the act of the switchman in going between the cars, in the view most favorable to the railroad, the case was one of concurring negligence; that is, was one where the injury complained of was caused both by the failure of the railway company to comply with the Safety Appliance Act and by the contributing negligence of the switchman in going between the cars. Under this condition of things it is manifest that the charge of the court was greatly more favorable to the defendant company than was authorized by the statute for the following reasons: Although by the third section of the Employers' Liability Act a recovery is not prevented in a case of contributory negligence, since the statute substitutes for it a system of comparative negligence whereby the damages are to be diminished in the proportion which his negligence bears to the combined negligence of himself and the carrier, in other words, the carrier is to be exonerated from a proportional part of the damages corresponding to the

amount of negligence attributable to the employé (Norfolk & Western Railway Co. v. Earnest, 229 U. S. 114, 122, 33 Sup. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172), nevertheless under the terms of a proviso to the section contributory negligence on the part of the employé does not operate even to diminish the recovery where the injury has been occasioned in part by the failure of the carrier to comply with the exactions of an act of Congress enacted to promote the safety of employés. In that contingency the statute abolishes the defense of contributory negligence, not only as a bar to recovery, but for all purposes. The proviso reads (Act April 22, 1908, c. 149, § 3, 35 Stat. 65, 66): 'Provided, that no such employé who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé.'"

This it seems to me is decisive of this case, and here, as there, the charge of the court "was greatly more favorable to the defendant company than was authorized by the statute."

[3] The Employers' Liability Act has expressly eliminated the defense of assumption of risk in certain specified cases, but in all other cases such assumption of risk has its former effect as a bar to an action by the injured employé, and when the employé knows of a defect in the appliances used by him, and appreciates the danger resulting, and continues in the employment without objection, or without obtaining from the employer an assurance of reparation, he assumes the risk, even though it may arise from the employer's breach of duty. Seaboard Air Line Railway v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. However, this rule as to assumption of risk has no application here, inasmuch as the Safety Appliance Act made it the absolute duty of the defendant company to equip the cars and engine with a workable and suitable automatic coupler. Grand Trunk Railway Co. v. Lindsay, supra. When the employé knows of the defect and appreciates the risk that is attributable to it, then if he continues in the employment without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employé assumes the risk, even though it arises out of the master's breach of duty. Seaboard Air Line R. v. Horton, supra. But this rule has no application in this case, inasmuch as it was the absolute duty of the defendant to equip the engine and car with the workable automatic coupler, and for the further reason that there was no evidence that the employé knew of the defect and appreciated the risk attributable to it. In Schlemmer v. Buffalo R. & P. Railway Co., 220 U. S. 590, 31 Sup. Ct. 561, 55 L. Ed. 596, it was expressly held that the Safety Appliance Acts of March 2, 1893, April 1, 1896, and March 2, 1903 (chapter 976, 32 Stat. 943), took away from the carrier the defense of assumption of risk by the employé, but did not affect the defense of contributory negligence. In Chicago, R. I. & P. Railway Co. v. Brown, 229 U. S. 317, 33 Sup. Ct. 840, 57 L. Ed. 1204, it was held that:

"Under the Safety Appliance Acts the failure of a coupler to work at any time sustains a charge of negligence on the part of the carrier."

This follows the holding in C., B. & Q. R. R. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582.

We have seen (Grand Trunk Railway Co. v. Lindsay, supra) that by the proviso referred to contributory negligence on the part of the employé does not operate even to diminish the recovery, where the injury has been occasioned in part by the failure of the carrier to comply with the exactions of an act of Congress enacted to promote the safety of employés, and that in that contingency the statute abolishes the defense of contributory negligence, not only as a bar to recovery, but for all purposes. Act April 22, 1908, c. 149, § 3, 35 Stat. 65, 66, in the proviso:

"Provided, that no such employé who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé."

If the court erred in submitting to the jury the question of the contributory negligence of the plaintiff after he had entered between the engine and cars, and in holding as it did, no possible harm was done to the defendant. The ruling was more favorable to the defendant than it was entitled to, and no harm resulted. In Kanawha & Michigan Railway Co. v. T. K. Kerse, Administrator of the Estate of Thomas P. Barry, 239 U. S. 576, 36 Sup. Ct. 174, 60 L. Ed. ——, decided January 10, 1916, the Supreme Court of the United States held:

"A judgment is not to be reversed for an error by which the plaintiff in error cannot have been prejudiced. And the refusal of an instruction as to the legal result that would follow only upon the hypothesis that the deceased knew of the presence of the timber, and knew it would not clear a man standing upon the top of a box car, became legally insignificant when the jury had in its findings distinctly negatived the facts that made up the hypothesis. Thus the progress of the trial rendered the error wholly immaterial to the merits. Greenleaf's Lessee v. Birth, 5 Pet. 132, 135 [8 L. Ed. 72]; Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 351 [22 Sup. Ct. 833, 46 L. Ed. 1193]."

It was not disputed that the plaintiff lost his hand on the night in question, and a portion of his arm, by having it crushed in the coupler attached to the engine while attempting to make the coupler work. There was evidence that the coupling was defective and had failed to work before. The question whether or not it was defective or in proper repair, so it would work, was submitted to the jury, and the jury found for the plaintiff. The damages were moderate, and less than they would have been, probably, had not the court submitted to the jury the question of contributory negligence, and allowed the jury to reduce damages in case it found the defendant was at all negligent under the circumstances and at the time specified in the charge. Under the decisions it is clear that recovery by the plaintiff was not defeated, even if he knew that the cars stood upon an incline or downgrade and failed to block them before going to the head of the engine to make the necessary examination and cause the coupler to work or operate.

I find no substantial error detrimental to the defendant. The motion to set aside the verdict and for a new trial is denied.