JOHN P. BARBEE v. JAMES C. DAVIS, Director General and Agent of the NORTH CAROLINA RAILROAD COMPANY, and the SOUTHERN RAILWAY COMPANY.

(Filed 22 January, 1924.)

1. **Pleadings—Amendments—Discretion of Court—Commerce — Federal Employers' Liability Act—Railroads.**

   In an action against a railroad company for damages for a personal injury brought within the time limited by the State statute, and which has been pending for several years, it is within the sound discretion of the trial judge not to permit the defendant to amend. its answer, just before the trial of the cause, and set up as a defense, under the Federal Employers' Liability Act, that the plaintiff, its employee, was, at the time of the injury complained of, engaged in interstate commerce, and his cause of action had been barred in two years under the provisions of the Federal statute.

2. **Same—Waiver.**

   Where a railroad company has been sued in the State court for damages for an alleged personal injury, and from the allegations of the complaint it appears that the cause of action was based upon the principles of intrastate commerce, by its answer the defendant waives its right thereafter to set up as a defense that the plaintiff, its employee, at the time of the injury, was engaged in interstate commerce, and contend that the Federal Employers' Liability Act controlled upon the trial.

3. **Same—Answer—Presumptions—Statutes.**

   Where an employee's action against a carrier to recover damages for its negligence in inflicting on him a personal injury, upon allegations of the complaint that it arose in intrastate commerce, these allegations will be taken as true when not denied in the answer. C. S., 545.

4. **Constitutional Law — Statutes — Federal Employers' Liability Act — Commerce.**

   The Federal Employers' Liability Act is valid and binding upon the State courts under the commerce clause of the Federal Constitution.

5. **Same—Evidence.**

   Where a railroad company has failed in apt time to plead defenses under the Federal Employers' Liability Act, and has thereby waived its right, and the trial has been proceeded with upon the allegations of the complaint ·that the plaintiff, its employee, had been injured while performing his duties in intrastate commerce, evidence that he was so engaged in interstate commerce is irrelevant and properly excluded.

6. **Appeal and Error — Objections and Exceptions — Questions and Answers—Record.**

   Exceptions to the exclusion of questions will not be considered on appeal unless the materiality of the expected answers is properly made to appear of record.

7. **Negligence—Evidence—Questions for Jury—Trials.**

   In an employee's action against a railroad company to recover damages for a personal injury alleged to have been negligently inflicted on

him in the course of performing his duties, evidence that he was therein injured while running along a way between two parallel tracks on the defendant's yard, by stepping on a piece of stick, unseen by him, while his attention was concentrated upon performing this service, and that it was the duty of the defendant to have kept this pass clean and safe for him, is sufficient to take the case to the jury upon the issue of the defendant's actionable negligence.

8. **Statutes—Federal Employers' Liability Act — Commerce — Intrastate Commerce.**

The Federal Employers' Liability Act, in relation to interstate commerce, has no application where the defendant railroad company's employee was at the time engaged in his employment as a brakeman in defendant's freight yard, and at the time complained of, his duties were in connection with an intrastate train, though trains engaged in interstate commerce were also made up in these yards.

APPEAL by defendants from *Stack, J.,* at May Term, 1923, of GUILFORD.

The material facts are as follows:

This was a civil action to recover damages for an alleged personal injury received by the plaintiff while working as a yard brakeman on the Pomona yards, near the city of Greensboro, N. C., the plaintiff alleging that the North Carolina Railroad Company was the owner of a railroad track from Charlotte, through Pomona and Greensboro, to Goldsboro, all in North Carolina; that the said railroad company, before the injury complained of and the bringing of this action, had leased its roadbed, yards, and privileges to the Southern Railway Company; that the Southern Railway Company had taken possession of the same, including the yards at Pomona, and had operated the same until 1 January, 1918.

That thereafter all of the railroad yards and switch tracks owned by the North Carolina Railroad Company (all being in North Carolina), and controlled or operated by the Southern Railway Company as lessee, including the locomotives, engines, cars and all other equipment of the Southern Railway Company, were taken over by the United States of America, and since that date, and up to and including the date of the alleged injury to the plaintiff, all of the lines, yards, switch tracks and other equipment of the said North Carolina Railroad Company and the Southern Railway Company were continuously in the possession of, operated and controlled by the Director General of Railroads of the United States, pursuant to certain acts of Congress and proclamations of the President of the United States.

That the Pomona yards is a place where cars are switched, and at the time of the injury to the plaintiff, cars were being assembled by the defendant. That there are twenty-six tracks running parallel and close

to each other, nearly east and west; and that there are brakemen, conductors and engineers who operate the switch engines and cars at Pomona yards for the purpose of assembling the box cars to be used by the defendant. That the plaintiff, at the time of his injury, was employed by the defendant as a brakeman upon said yard, and was in the performance of his duty as such brakeman. That on the morning of 8 April, 1919, the plaintiff was on the Pomona yard, performing his duty as a brakeman; that the engineer on the shifting engine, with whom the plaintiff operated, was running his engine with two cars towards the switch, and it was the duty of the plaintiff to run down the right of way along by the side of the track and by the side of the box cars so that, at the proper place, he might pull the lever of the box cars and uncouple the box cars from the engine, so that they would go onto the switch, as intended by the engineer. That as the engine came back towards the switch the plaintiff ran, as he was required to do, along between the two tracks, for the purpose of performing his duty.

That as he ran down the track towards the switch between the tracks he stepped upon a stick of wood, which the defendant had negligently allowed to remain in the run-way, and which the plaintiff did not see, and that said stick flew up and caught him and threw him upon the ground with great violence and force, whereby his left knee joint was badly damaged, and he was permanently injured.

The defendant admitted that the North Carolina Railroad Company was the owner of a railroad track from Charlotte, through Pomona and Greensboro, to Goldsboro (all in North Carolina); that the Southern leased the same and immediately took possession of the road and the property set forth in the lease of the North Carolina Railroad, and operated it until 1 January, 1918; and that, thereafter, the same was operated and controlled by the Southern Railway Company as lessee; and that the engines, cars and all other equipment of the Southern Railway Company was taken over by the United States of America and was continuously operated and controlled by the United States, through the Director General of the United States, pursuant to acts of Congress and proclamations of the President; that the Pomona yards was a place where cars were switched, and at the time of the injury to the plaintiff there were twenty-six tracks running parallel and close to each other, nearly east and west, and that brakemen, conductors and engineers operated switch engines and cars upon the Pomona yards for the purpose of assembling box cars to be used by the defendant, and that the plaintiff, at the time of his injury, complained of, was employed by the defendant as a brakeman upon said yard, for a valuable consideration, and at the time of his injury was in the performance of his duty as such brakeman, but denied the negligence as set forth in

the complaint, and pleaded contributory negligence of the plaintiff as the proximate cause of his injury.

The defendants, before going into the trial, filed the following motion: "The defendants, through their counsel, move the court for leave to file an amendment to the original answer, heretofore filed in this action by the defendants, to the end that the said defendants may plead the Federal Employers' Liability Act, and allege additional facts with reference to the plaintiff's injury, to wit, that the plaintiff was, at the time of said injury, employed in, and the defendants were, at the time of said injury, engaged in interstate commerce; that the rights of the said plaintiff and those of the defendants are controlled and determined by the terms of the said Federal Employers' Liability Act; that the plaintiff, at the time of his said injury, was engaged in shifting cars, which cars were destined for points outside of the State of North Carolina, as well as within said State, and which cars were being used in interstate commerce; that the plaintiff's cause of action accrued more than two years prior to the filing of his complaint, and that said action is thereby barred on account of the failure of the said plaintiff to bring his action within the prescribed time. Furthermore, that the defendants be permitted to set up the other facts and matters more particularly recited in the proposed amendment to the original answer, which proposed amendment is hereto attached."

The motion was denied by the court below. To the court's ruling in denying the motion filed, and denying the defendants' right to file the amendment, the defendants excepted.

The following issues were submitted to the jury, and their answers thereto:

"1. Was plaintiff injured by the negligence of the defendant, as alleged in the complaint?    Answer: 'Yes.'

"2. Did the plaintiff, by his own negligence, contribute to his injury, as alleged in the answer?    Answer: 'No.'

"3. What damage, if any, is the plaintiff entitled to recover of the defendant?    Answer: '$6,200.' "

There are eleven assignments of error, which will be considered in the opinion.

*J. A. Barringer and R. C. Strudwick for plaintiff.*
*Manly, Hendren & Womble and Wilson & Frazier for defendants.*

CLARKSON, J.  The first assignment of error by defendant is as follows:

"The action of his Honor in overruling the defendant's motion for leave to file an amendment to the original answer filed in the action, to

the end that the said defendants might plead the Federal Employers' Liability Act and allege additional facts with reference to the plaintiff's injury, to wit, that the plaintiff was, at the time of said injury, employed in, and the defendants were, at the time of said injury, engaged in interstate commerce."

This suit was commenced by the issuance of summons on 10 December, 1921, which was served the same day on the defendants. The complaint was filed, and the defendants answered, denying any negligence, and, as a further defense, set up the plea of contributory negligence. The facts as to when, where, and how the plaintiff was injured by the defendants were fully and with definiteness set forth in the complaint. No request, before answer, was made by defendants to have complaint more definite or a bill of particulars asked for.

In *Allen v. R. R.,* 120 N. C., 550, this Court said: "When there is a defective cause of action, although in due form, the plaintiff cannot recover unless the court, in its discretion, on reasonable terms, allows an amendment. When a good cause of action is set out, but defective in form, the court may require the pleadings to be made definite and certain by amendment. The Code, secs. 259 and 261. For this purpose, however, the objector must move in apt time. It is too late after demurrer or answer. *Stokes v. Taylor,* 104 N. C., 394. This motion is addressed to the discretion of the court. *Conley v. R. R.,* 109 N. C., 692; *Smith v. Summerfield,* 108 N. C., 284." *Bristol v. R. R.,* 175 N. C., 510, and cases cited.

The injury occurred to plaintiff on 8 April, 1919. The case was on the docket at issue for some time in the Superior Court of Guilford County. When the case came on for trial, at May Term, 1923, the defendants made a motion to amend their answer, and asked that they be allowed to plead the Federal Employers' Liability Act, and at the time of the injury plaintiff was engaged in interstate commerce, and that plaintiff's cause of action accrued two years prior to the filing of his complaint, and that the action was on that account barred. The court below refused the motion, and the defendants excepted. This matter was in the sound discretion of the court below, under the facts. There was no gross abuse of the discretion. *Fay v. Crowell,* 184 N. C., 417; *Brewer v. Ring,* 177 N. C., 476.

The question further presented in this case is that the allegations in the pleadings are all based on intrastate commerce and there is nothing in the pleadings to show interstate commerce, under the Federal Employers' Liability Act. The pleadings of plaintiff and defendants are based on the regular course and practice of the State courts, and the definite allegations show intrastate commerce. Can the defendants, on trial of the cause, if the evidence shows an interstate question, take

advantage of this and the two-years statute, and defeat plaintiff's recovery without pleading the Federal statute? Should not defendants be bound by their answer, and have they not waived any other defense except that set up in the answer? We think so, and this is the orderly and established rule of practice in this State. *Fleming v. R. R.*, 160 N. C., 196; *Bradberry v. R. R.*, 149 Iowa, 57.

The amendment to the answer which was requested was for the purpose of setting up, under the Federal Employers' Liability Act, that the complaint in the action was not filed within two years after the injury. (It was brought within three years—the State statute.) The summons was issued on 10 December, 1921, and the injury occurred on 8 April, 1919. The court below refused to allow the amendment to the answer, which, in its sound discretion, it had a right to do.

The facts alleged in the complaint were that the plaintiff was injured while working as a yard brakeman on the Pomona yards, near the city of Greensboro, N. C.; the plaintiff alleging that the North Carolina Railroad Company was the owner of a railroad track from Charlotte through Pomona and Greensboro to Goldsboro (all places in North Carolina). It was leased to the Southern Railway Company and taken over by the government.

The allegations of the complaint set forth the injury at Pomona, N. C., and on an intrastate railroad in North Carolina. The defendant admitted that the North Carolina Railroad Company was the owner of a railroad track from Charlotte through Pomona and Greensboro to Goldsboro (all places in North Carolina); that it was leased to the Southern Railway Company and taken over by the government. The defendants denied negligence and pleaded contributory negligence.

In the answer no allegation of interstate commerce or question of facts that brought the case within the Federal Employers' Liability Act was made. Our statute (C. S., 543) is as follows: "Every material allegation of the complaint not controverted by the answer is, . . . for the purposes of the action, taken as true." . . .

If the defendants had set up the Federal Employers' Liability Act and the two-years statute, in accordance with the law and practice of the courts of this State, its provisions would apply.

The Federal Employers' Liability Act, enacted by Congress, has been held constitutional, under the power committed to it by the Commerce Clause of the Constitution, and all States are bound by its provisions. The Constitution of the United States is the "golden cord" that binds the States together.

In the instant case the principle as laid down by *Mr. Justice Clarke*, of the Supreme Court of the United States, in *Atlantic Coast Line Ry. Co. v. Mims*, 242 U. S. (61 Law Ed.), 479, is the view applicable to

the facts in this case. It is said there: "While it is true that a substantive Federal right or defense duly asserted cannot be lessened or destroyed by a State rule of practice, yet the claim of the plaintiff in error to a Federal right not having been asserted at a time and in a manner calling for the consideration of it by the State Supreme Court under its established system of practice and pleading, the refusal of the trial court and of the Supreme Court to admit the testimony tendered in support of such claim is not a denial of a Federal right which this Court can review."

*Mr. Justice Holmes,* in *Nevada-Cal.-Oregon Railway Co. v. Burrus,* 244 U. S., 105, said: "Upon this question, whether a claim of immunity under a statute of the United States has been asserted in the proper manner under the State system of pleading and practice, 'the decision of the State Court is binding upon this Court when it is clear, as it is in this case, that such decision is not rendered in a spirit of evasion, for the purpose of defeating the claim of Federal right.' *Atlantic Coast Line R. R. Co. v. Mims,* 242 U. S., 532, 535. The most that could be said in this case was that the Supreme Court was influenced in its judgment by the fact that the railroad, after treating the plaintiff very badly, was trying to escape liability by an after-thought upon a debatable point of law—not at all by the fact that the law involved was Federal. The plaintiff had tried the case, relying upon the presumption which was sufficient as the pleadings stood. *Cin., New Orl. & Tex. Pac. Ry. Co. v. Rankin,* 241 U. S., 319. The Court reasonably might decline to put him to procuring other evidence from a distance on the last day of the trial, upon a new issue presented after his evidence was in. We perceive no reason why this Court should interfere with the practice of the State."

In *Hartford Life Ins. Co. v. Johnson,* 249 U. S., 492, the Court says: "The jurisdiction of this Court to review the final judgment or decree of the highest Court of a State, in such a case as we have here, is defined in section 237 of the Judicial Code, as amended 6 September, 1916, chapter 448, 39 Stat., 726, which provides that it shall be competent for this Court, by *cerliorari,* to require any such cause to be certified to it for review when there is claimed in it any title, right, privilege or immunity under the Constitution of the United States, and 'the decision is either in favor of or against the title, right, privilege or immunity especially set up or claimed, by either party, under such Constitution.' It is the settled law that this provision means that the claim must be asserted at the proper time and in the proper manner by pleading, motion, or other appropriate action under the system of pleading and practice, ' . . . and upon the question whether or not such a claim has been so asserted, the decision of the State Court is binding upon

this Court when it is clear, as it is in this case, that such decision is not rendered in a spirit of evasion, for the purpose of defeating the claim of Federal right.'" *Atl. C. L. Ry. Co. v. Mims, supra; Gasquet v. Lapeyre,* 242 U. S., 367, 371, and cases cited.

The second, third, fourth, and fifth assignments of error, which are as follows, will be treated together:

"The court below refused to allow the defendants to ask the witnesses named the following questions:

"John P. Barbee. 'You have seen cars in these trains that you broke up and reassembled for the Pennsylvania Railroad, for the Norfolk and Western road, for the Chesapeake and Ohio road, the Erie, and for practically all of the great trunk lines in the country?'

"John P. Barbee. 'I ask you whether or not, in your employment there on the yards of the Southern Railway Company, on this day and on prior days, you had not been engaged in breaking and reassembling cars that belonged to the Pennsylvania Railroad, the Chesapeake and Ohio Railroad Company, and the Erie Railroad Company, and other large trunk lines, and if you didn't see on those cars the names of the railroads mentioned?'

"W. M. Thompson. 'Did you have cars of all kinds, destined to various places throughout the United States, in these freight trains?'

"John P. Barbee. 'Did you, on the morning of this accident, take a freight train to be reassembled that contained cars engaged in interstate commerce and destined to various points throughout the United States?'"

The whole theory of the case was tried on the pleadings that the complaint and answer raised the sole issue of intrastate commerce. Under this aspect of the case the exclusion of the evidence of the court below was correct.

There was no error, for another reason. *Adams, J.,* in *Snyder v. Asheboro,* 182 N. C., 710, says: "Since the record fails to disclose what the witness would have said, we cannot assume that his answer would have been favorable to the defendant. It would be vain to grant a new trial upon the hazard of an uncertain answer by the witness. *In re Smith's Will,* 163 N. C., 466; *Dickerson v. Dail,* 159 N. C., 541; *Boney v. R. R.,* 155 N. C., 95; *Fulwood v. Fulwood,* 161 N. C., 601; *Schas v. Assurance Society,* 170 N. C., 421." *S. v. Jestes,* 185 N. C., 736; *Hosiery Co. v. Express Co.,* 186 N. C., 556.

The sixth assignment of error was as follows: "The action of his Honor in permitting the plaintiff to introduce the record of the old action of John P. Barbee against the North Carolina Railroad Company, No. 6653, as covered by defendant's exception six." The record of the old action, excepted to above, does not appear in the record in

this case, and this assignment cannot be considered. The record, if introduced, was immaterial and not prejudicial, from the view we take of this case.

The seventh assignment of error is the refusal of the court below to sign the judgment tendered by defendant, that the action is barred, under the Federal Employers' Liability Act, as it was not brought within two years of the injury.

The eighth was to the court below overruling defendants' motion of nonsuit.

The ninth was to the court submitting the issues set out in the record.

The tenth was to the court below refusing to set aside the verdict.

The eleventh was to the court signing the judgment.

All these assignments of error will be considered together; they all relate to the issue in this case whether plaintiff, at the time he was injured, was engaged in intrastate or interstate commerce. The facts and the law, as construed by the United States Court, makes the case a very close one, but we are of the opinion that the defendants were engaged in intrastate commerce at the time plaintiff was injured.

We have read the record carefully, and think the following is a fair statement of the facts to present these assignments of error:

"Plaintiff was injured in the Pomona yards of defendants, on 8 April, 1919. These yards are located about two miles southwest of Greensboro station, North Carolina, and are used for storing, assembling and switching freight cars.

"Plaintiff was a yard brakeman. He did not run on any train. He was a member of the yard crew, of which W. M. Thompson was engineer. This crew confined its operations to switching cars in the yard. In this yard was what was designated as a 'lead track.' From this main or 'lead track' there branched out seven other tracks, or switches used for the storage of cars. Upon track, or switch, No. 4, cars for Selma, N. C., were placed or stored; upon track, or switch, No. 6, cars for Spencer, N. C., were placed or stored; upon track No. 3 cars for Monroe, Va., and upon track No. 5 cars for Winston-Salem, N. C.

"Upon the day of the injury the yard crews, including plaintiff, was engaged in placing cars from the lead track upon the various switches branching out therefrom.

"It does not appear when or, as a part of what train, if any, these cars were brought into the Pomona yards. It does not appear whether this train brought them there, if they were ever a part of any train, was a local or a through train.

"About 11 o'clock that day the yard engine was pulling four empty cars along the lead track for the purpose of placing, 'kicking,' or shunting two of them into switch No. 4 (Selma, N. C.), and two of them

BARBEE *v.* DAVIS.

into switch No. 6 (Spencer, N. C.). The manner of doing this was as follows: The engineer would get up a speed of ten or twelve miles an hour, and the plaintiff was required to run along the side of the moving cars, and when near the switch into which it was desired certain cars to go, he was required to give a signal to the engineer, and at the proper moment to run in and cut the car loose from the others, when the car, by its own momentum, would roll or be 'kicked' into the switch where it was desired to place it.

"There was a runway near the lead track, along which the yard brakeman was required to run. He had to run at a speed ten or twelve miles per hour. This operation absorbed his entire attention. Defendants employed a man to clear this runway and to keep it clear of obstructions. At the moment of his injury plaintiff had, in the above manner, thrown two of the cars into No. 6 track, or switch (Spencer, N. C.), and had come back and started to throw the other two into No. 4 track, or switch (Selma, N. C.). He gave what is known as the 'kick' signal to the engineer—that is, to increase the speed to ten or twelve miles an hour, when plaintiff, as he was required to do, would cut the cars off and separate them from the engine. Plaintiff, in doing this, while running along the runway on the side of the cars opposite the switch tracks, stepped on a piece of wood lying in the runway, which flew up and caught him between his knees, threw him down, broke his knee-cap, and permanently injured him."

According to the evidence, these cars were being put on intrastate tracks, to be carried to intrastate places. Is this intrastate or interstate commerce? We think the United States Court decisions show intrastate. *Mr. Justice Pitney*, in *Erie Railroad Co. v. Welsh*, 242 U. S., 306, said: "It was in evidence, also, that the orders plaintiff would have received had he not been injured on his way to the yardmaster's office would have required him immediately to make up an interstate train. Upon the strength of this it is argued that his act at the moment of his injury partook of the nature of the work that, but for the accidental interruption, he would have been called upon to perform. In our opinion, this view is untenable. By the terms of the Employers' Liability Act the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act. *Ill. Central R. R. Co. v. Behrens*, 233 U. S., 473, 478."

*Mr. Justice Van Devanter*, in *Ill. Cent. R. R. Co. v. Behrens, supra*, says: "Here, at the time of the fatal injury, the intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city to another. That was not a service in interstate commerce,

and so the injury and resulting death were not within the statute. That he was expected, upon the completion of that task, to engage in another which would have been a part of interstate commerce, is immaterial under the statute, for by its terms the true test is the nature of the work being done at the time of the injury."

"The ordinary and usual test in determining whether switching crews employed in railroad yards are engaged in interstate commerce is whether at the very moment of the accident they are assisting in moving interstate traffic—that is, cars, either loaded or empty, originating in one State and destined to a point in another State, territory, or foreign country." 1 Roberts Fed. Liability of Carriers, 873, citing *S. A. L. Ry. Co. v. Koennecke,* 239 U. S., 352; *Penna. Co. v. Donat,* 239 U. S., 50; *Ill. Cent. Ry. v. Behrens, supra; Clark v. Erie R. Co.,* 230 Fed., 478; *Shanley v. Philadelphia & R. R. Co.,* 221 Fed., 1012.

We think the motion to nonsuit was properly overruled. The facts admitted are: "That as the engine came back towards the switch, the plaintiff ran, as he was required to do, along between the two tracks, for the purpose of performing his duty; that as he ran down the track towards the switch between the tracks, he stepped upon a stick of wood which the defendant had negligently allowed to remain in the runway, and which the plaintiff did not see, and that said stick flew up and caught him and threw him upon the ground with great violence and force, and he was permanently injured."

From the record, the court below, in the charge to the jury, presented the law applicable to the facts. It was a question of fact for the jury to determine. On the entire record we can see no prejudicial or reversible error.

No error.