KAY JYACHOSKY v. L. R. WENSIL AND CURTIS GARMON.

(Filed 5 May, 1954.)

1. **Automobiles § 24½ d—**

It is competent for witnesses to testify from appearance that the truck which they saw at the scene of the accident was the same truck, identified as belonging to defendant employer, which they saw shortly thereafter at another place.

2. **Automobiles § 23½ e—**

Testimony of witnesses identifying the truck which they saw at the scene of the accident as the same truck identified as belonging to defendant employer is sufficient to take the case to the jury on that question, defendant employer's evidence in conflict therewith being for the jury to resolve.

3. **Same—**

G.S. 20-71.1 does not affect the burden of proof but merely provides that proof of ownership of a truck involved in an accident establishes *prima facie* that the truck was being operated by an employee and that at the time the employee was acting within the scope of his employment. Such *prima facie* showing is sufficient to take the issue of *respondeat superior* to the jury, but does not compel an affirmative finding thereon.

4. **Evidence § 7e—**

The establishment of facts sufficient to give rise to a *prima facie* case merely takes the issue to the jury, and the credibility of defendant's evidence in explanation or rebuttal is also for their determination.

5. **Automobiles § 24½ f—Instruction on issue of respondeat superior held without error under provisions of G.S. 20-71.1.**

Plaintiff offered evidence that the truck involved in the accident belonged to defendant employer and also introduced in evidence the certificate of registration disclosing that license for the vehicle was issued to defendant employer as the owner. Defendant employer introduced evidence that the

JYACHOSKY *v.* WENSIL.

operator of the truck was his employee but that at the time of the accident the employee was on a purely personal mission and was not acting within the scope of his employment. *Held:* Under the provisions of G.S. 20-71.1 the court correctly charged the jury that if the plaintiff had satisfied them by the greater weight of the evidence that defendant employer was the owner of the truck involved, the jury should consider the question of agency, and that if plaintiff had satisfied them by the greater weight of the evidence that the operator of the truck was then and there driving it as an employee or agent of defendant employer and was acting within the scope of his employment or agency, to answer the issue in the affirmative, but that if plaintiff had not so satisfied them, to answer the issue in the negative. In addition, the court charged peremptorily that if the jury believed defendant's evidence to answer the issue, no.

**6. Automobiles § 23½ d—**

In an action seeking to hold the owner of a vehicle liable under the doctrine of *respondeat superior* it is competent for plaintiff to introduce in evidence the certificate of registration from the Motor Vehicles Department indicating that license for the vehicle was issued to the employer.

**7. Husband and Wife § 10—**

In the wife's action to recover for personal injuries, the admission of evidence as to hospital bills paid by the husband cannot be prejudicial when the husband would be estopped to recover these items of damage in a separate action.

**8. Appeal and Error § 39f—**

Upon an issue relating solely to whether a truck involved in an accident was owned by defendant employer, the liability of the employer under the doctrine of *respondeat superior* being presented under a subsequent issue, an instruction that the issue presented a question of fact and that "There is no law involved in that question." *Held:* Not prejudicial when considered in context.

**9. Same—**

Inadvertence of the court in referring to the truck in question as a "panel" truck when in fact the truck was a pickup truck, *held,* not prejudicial, it being apparent that the jury was not misled and there being no request by counsel at the time that the inadvertence be corrected.

**10. Trial § 22c—**

Contradictions and discrepancies in the evidence are for the jury to resolve, largely on the basis of credibility of the witnesses.

**11. Appeal and Error § 1—**

The Supreme Court on appeal is limited to consideration of errors of law in the court below.

BARNHILL, C. J., concurring.
WINBORNE and PARKER, JJ., join in concurring opinion.

APPEAL by defendants from *Whitmire, Special Judge,* 3 October, 1953, Extra Civil Term, of MECKLENBURG.

Action to recover damages for personal injuries.

Plaintiff alleged that on 16 June, 1951, about 7:45 p.m., she was riding in an automobile (Studebaker) operated by Andrew Jyachosky, her husband, traveling east on Highway #74 en route from Charlotte, *via* Monroe, to Wadesboro; that they were meeting a Ford automobile; that a red Dodge pick-up truck, traveling west, suddenly and negligently pulled out from behind the Ford, right in front of the car in which plaintiff was riding and in its lane of travel; and that the car in which plaintiff was riding was forced off the highway and collided with a parked car on the shoulder of the highway, throwing plaintiff from the car onto the pavement, unconscious and seriously injured. Evidence offered by plaintiff tended to establish these allegations.

Plaintiff alleged further that the red Dodge pick-up was owned by defendant L. R. Wensil and was operated by defendant Curtis Garmon, who, upon the occasion, was an employee of defendant Wensil, then and there acting within the scope of his employment. Defendants, answering, denied these allegations.

Defendants, answering, denied all allegations of the complaint, except those relating to residence of the parties and the allegation that the defendant Wensil was engaged in the plumbing and heating business under the trade name of L. R. Wensil Company and that the defendant Garmon during the period in question was in the employ of the defendant Wensil.

Testimony offered by plaintiff included the following:

Paul P. Ward, a State Highway Patrolman stationed in Union County, testified that he arrived at the scene of injury, some 3-3½ miles west of Monroe, about 8:10 p.m.; that he put out a call for a red Dodge pick-up truck that had some appliance, either a refrigerator or a stove, on the back of it; that some 45 minutes later, in response to a call, he went to Matthews, in Mecklenburg County, some 10 or 11 miles west of the scene of injury, saw A. E. Pierce, a State Highway Patrolman who had arrested defendant Garmon; that he took defendant Garmon to the Police Station in Monroe; that he also took into his possession a red Dodge pick-up, which had a stove on the back of it and had attached a North Carolina license plate for 1951 bearing the number 841-730; and that he had some one drive this truck to the Police Station in Monroe where it remained until some time the next morning.

A. E. Pierce, a State Highway Patrolman stationed in Mecklenburg County, testified that he arrested defendant Garmon at Lemmons Service Station in Matthews; that he had in his possession a 1940 red Dodge pick-up truck, with a stove, white with black trimmings, and also some scattered plumbing fixtures and fittings, in the truck bed; that he held defendant Garmon and the truck until Patrolman Ward came; and that defendant Garmon and the truck were turned over to Ward.

Plaintiff's witnesses Jyachosky, Garland, Mills, Presson and Moore, and defendants' witnesses Plyler, Baker and Howie, gave testimony tending to show the make, model, color, markings and other *indicia* of the truck observed by them upon the occasion of plaintiff's injury.

Plaintiff's witnesses Ward and Pierce, and defendant Garmon gave testimony tending to show identifying *indicia* of the truck defendant Garmon had when arrested in Matthews.

Plaintiff's witnesses Jyachosky and Garland gave testimony tending to show the appearance of the red Dodge pick-up they saw at the Police Station in Monroe.

While different inferences may be drawn therefrom, none of the witnesses mentioned, so far as the evidence discloses, noticed the number "10" on the pick-up truck observed by them on 16 June, 1951.

Andrew Jyachosky testified he saw the red Dodge pick-up, with the appliance in the truck bed and a white emblem on the door, at the Police Station in Monroe. Over objection by defendants, he testified on direct examination as follows:

"Q. Did the truck which you observed at the Police Station have any markings on it?

"A. Yes, sir, it had a white emblem on the door.

"Q. Mr. Jyachosky, can you state whether the truck which you observed at the Police Station on the night following the accident was the same truck which you have testified ran you off the road?

"A. Yes, sir, I'd say it was the same truck."

On cross-examination by counsel for defendant Garmon, he testified that his identification was based upon his observation of the red pick-up truck in the glance he had of it as it was passing on his left.

Tom Garland testified that he was standing at Moore's Body and Paint Shop, some 50 feet north of the highway, when he heard tires squeal and a crash; that he ran out to the road, getting there while the Studebaker (the car in which plaintiff was riding) was still in motion; that he saw a red pick-up truck, the paint "aged with the truck," with some name over the rear glass, and in the truck bed was a white appliance of some kind; that it was not at Smith's store and filling station but was on the highway, "zigzagging up the road," in the "vicinity" of Smith's place, and continued to travel as long as he observed it. His estimate was that the truck was from one to two blocks away when he observed it. Over objections by defendants, he testified on direct examination as follows:

"Q. Well, Mr. Garland, do you know whether you have seen the truck or not?

"A. I'm satisfied I did, yes.

"Q. Where did you see the truck?

"A. Can I tell the hour, approximately?

"Q. Yes, sir, and the place.

"A. Between 8 and 9 o'clock Sunday morning, beside the police building in Monroe."

On cross-examination by counsel for defendant Wensil, he testified: "I'm positive it was the same thing I saw Saturday afternoon. I was starting to say that it was only my opinion, that's right. Well, to be specific, I will say yes, that it was the truck."

Over objection by defendants, plaintiff introduced in evidence a certificate from the Director of Registration Division, North Carolina Department of Motor Vehicles, to the effect that license number 841-730 was issued and assigned to L. R. Wensil for 1951 for a 1940 Dodge truck bearing specified motor and serial numbers. We note the following: "Defendant Wensil objects because of the question of identity of the truck with the one that caused the accident, not as to the form of the certificate."

Testimony offered by defendants included the following:

Defendant Garmon testified that the truck of defendant Wensil operated by him on 16 June, 1951, was in no way involved.

John Plyler, Aaron Baker and Sallie Howie testified that Plyler and Baker were seated in a car parked in front of the Howie residence, located some 50 yards north of Highway #74 and across the road from Smith's store and filling station; that Miss Howie was standing beside the car; that they saw the red Studebaker, traveling east, pull off the highway to its right and heard the collision between it and a car parked on or near the shoulder near the front of the Strawn house, on the south side of the highway and across from Moore's Body and Paint Shop; and that the only other vehicle present at or about this time was a truck, traveling west, which appeared to be traveling in the middle of the road and then pulled towards its left in front of the Studebaker and then entered the premises of Smith's store and filling station and stopped there for a few seconds before driving on west towards Charlotte.

Defendant Wensil testified that he operated his plumbing and heating business out of Concord; that in June, 1951, he had the "right good sized job" at Kinston, where Garmon was employed; that about a week or ten days after 16 June, 1951, he was advised of the accident; that he investigated and found that defendant Garmon had his truck #10 that week-end; that his trucks were numbered, the respective number being painted on each truck; and that, upon learning of the accident and ascertaining the truck defendant Garmon had 16 June, 1951, he took this truck (#10) to the scene of injury, and located John Plyler and Aaron Baker. Plyler and Baker testified that the truck he showed them was not the truck they saw at Smith's store and filling station shortly after plaintiff was injured. Photographs were made of this truck (#10). Plyler and Baker testified that the truck they had seen on 16 June, 1951, was not the truck shown in the photographs.

H. E. Howell testified that he was in charge of the Wensil trucks, at the Wensil place of business in Concord; that he did not learn of the accident until around 4 July, 1951; that he then assisted in identifying the truck defendant Garmon had on 16 June, 1951; that he knew this truck was #10, because he "issued that truck to him"; that he had painted this truck about three weeks before 16 June, 1951; that the signs on it were complete, not painted but pasted on and shellacked; and the number "10" was painted thereon.

The photographs, defendants' exhibits 8, 9, 10 and 11, show a truck of clean appearance, with the number "10" appearing prominently thereon, and with very plain markings on the side, "One Stop Home Utility Service," and "L. R. Wensil Co. Plumbing, Electrical, Sheet Metal, Heating," "Concord, N. C.," and "Dial—2266," and on the back of the cab, "L. R. Wensil Co." It does not appear when the photographs were made, but since a 1952 license tag is shown it may be assumed that they were made many months after plaintiff's injury.

Neither of the State Highway Patrolmen, nor any other of plaintiff's witnesses, were questioned concerning these photographs. It does not appear who got the 1940 red Dodge pick-up from the Police Station in Monroe or any circumstances in connection with its removal therefrom.

E. L. Riggins testified that defendant Garmon was working with him on the Wensil job at Kinston; that he had a truck on that job for carrying materials around to different places, on the job, as needed; that on 15 June, 1951, he sent him to Concord to get more materials, mostly soil pipe fittings, giving him permission to spend the night in Monroe on his way back; that he had permission to go to Concord and Monroe, nowhere else, and that he (Riggins) was familiar with Highway #74 between Monroe and Charlotte, a distance of 26 miles.

Defendant Garmon testified that he was working as a plumber's helper on the Wensil job at Kinston; that on Friday, 15 June, 1951, he left Kinston in Wensil's Dodge pick-up truck, driving to Monroe and spending the night there; that the man in charge (Mr. Bill Riggins) told him to "take the truck to see about your business and bring the material back"; that his personal business was to close out his apartment at Monroe, make provision for removal of his furniture, etc., with the idea of living in Kinston while the job lasted; that he drove to Concord the morning of 16 June, 1951, arriving at Wensil's place there about 9 a.m., where the truck was washed; that he got the materials, consisting of pipe fittings, which he was to take back to Kinston, and also a small stove, suitable to be fitted in a trailer; and that he got back to Monroe about 4:00 p.m. He testified that the truck he was driving was the Wensil truck #10 shown in the photographs.

Defendant Garmon further testified that about 7:00 p.m., in Monroe, he decided to drive to Charlotte to see his uncle, who lived on North Davidson Street; that he drove from Monroe to Charlotte on Highway #74, at a speed of 35-40 miles per hour, meeting cars but passing none, arriving in Charlotte "a little after seven," "maybe 7:30"; that when he got to his uncle's home he found the door locked and no one there; that he waited there 25 to 30 minutes, maybe longer, failed to see his uncle, drove out Davidson Street to Trade Street; that, traveling east on Trade Street he came to the McDowell Street crossing where he saw Caritha Barrino, who lived in Monroe and whom he knew, standing on the corner waiting for the Monroe bus; that he invited her to ride with him; that they left Charlotte on Highway #74 and did not stop until they reached Lemmons Service Station in Matthews, where he was arrested.

Caritha Barrino, who was with defendant Garmon when he was arrested in Matthews, testified that on 16 June, 1951, she came to Charlotte from Monroe by bus; that she spent most of her time in Charlotte window-shopping; that she was at McDowell and Trade Streets, waiting for the Monroe bus, which she expected around 7:55 to 8:00 p.m.; that at that time she lived with her people in Monroe in the same apartment house with defendant Garmon; that defendant Garmon came along in the truck; and that she got in and rode with him out Highway #74 without stopping until they reached the place in Matthews where defendant Garmon was arrested.

The issues upon which the case was submitted, and the jury's answers thereto, are as follows:

"1. Did the motor vehicle of the defendant Wensil, and driven by the defendant Garmon, cause the vehicle in which the plaintiff was riding to leave the highway and collide with a third vehicle, resulting in injuries to the plaintiff, as alleged in the Complaint?

"Answer: YES.

"2. If so, was said collision and resulting injuries proximately caused by the negligence of the defendant Garmon, as alleged in the Complaint?

"Answer: YES.

"3. At the time of said collision, was the defendant Wensil's vehicle being driven and operated by the defendant Garmon as the agent of the defendant Wensil, for the defendant Wensil's benefit, and within the course and scope of the defendant Garmon's employment, as alleged in the Complaint?

"Answer: YES.

"4. What amount is the plaintiff entitled to recover of the defendants Wensil and Garmon?

"Answer: $18,000.00.

"5. What amount is the plaintiff entitled to recover of the defendant Garmon?

"Answer:  "

The court signed judgment on the verdict against both defendants and they appeal, assigning errors.

*Taliaferro, Grier, Parker & Poe for plaintiff, appellee.*
*Coble Funderburk for defendant Garmon, appellant.*
*Jones & Small and Bernard W. Cruse for defendant Wensil, appellant.*

BOBBITT, J.   The assignments of error upon which appellants place great stress challenge the sufficiency of the evidence to warrant submission to the jury of the first and third issues.   These assignments are directed to the refusal of the court below to sustain their motions for judgment of nonsuit (AE 11, 12, 13 and 14) and to its refusal to direct a verdict in their favor on the first and third issues.   (AE 15, 16.)

Plaintiff's case rests principally upon evidence as to appearance of the truck involved in causing her injury; evidence as to the appearance of the truck in possession of Garmon at the service station in Matthews when he was arrested and thereafter parked at the Police Station in Monroe; and evidence from two witnesses who saw the truck at the scene of injury and who identified the truck at the Police Station in Monroe as being the same truck.   It was sufficient for submission to the jury on the question as to whether the truck operated by Garmon was the truck involved in causing plaintiff's injury.   In this connection, we note that the rule as to the sufficiency of circumstantial evidence in criminal prosecution differs from that applicable in civil actions.   *Hat Shops v. Ins. Co.,* 234 N.C. 698, 68 S.E. 2d 824, and cases cited.

While defendants assign as error (AE 1, 4) the admission of the quoted testimony of Jyachosky and Garland, they cite no authority in support of this contention.   The testimony is clearly competent.   Its credibility was for the jury.   We have considered all the evidence, testimony and exhibits, carefully.   It would serve no useful purpose to set forth in detail the testimony of Jyachosky and Garland or of the other witnesses.   Analysis thereof only emphasizes the conflicts and contradictions and brings us to the conclusion that decision on the crucial issues was dependent upon determination of the credibility of the witnesses.   The testimony of Jyachosky and Garland, considered with the testimony of Patrolmen Ward and Pierce, fully justified submission of the first issue.

Defendant Wensil further challenges the sufficiency of the evidence to warrant submission to the jury on the third issue on the ground that defendant Garmon, in any event, was on a personal mission and was not

operating the Wensil truck within the scope of his employment and in furtherance of his employer's business.

It is true now, as it was when *Carter v. Motor Lines,* 227 N.C. 193, 41 S.E. 2d ·586, was decided, that plaintiff was required to allege and establish that the operator of the truck was an agent or employee of the owner thereof and that this relationship existed at the time and in respect of the very transaction out of which injury arose before the doctrine *respondeat superior* applies. As to necessity for such pleading: *Parker v. Underwood,* 239 N.C. 308, 79 S.E. 2d 765; *Hartley v. Smith,* 239 N.C. 170, 79 S.E. 2d 767.

In *Carter v. Motor Lines, supra,* where plaintiff was nonsuited, *Barnhill, J.* (now C. J.), after reviewing many decisions, pointed out that the well established rule in North Carolina required a plaintiff, after showing ownership of the truck and the employment of the operator by such owner, to go further and offer positive evidence that the operator. was about his employer's business at the time and in respect of the very transaction out of which the injury arose. This rule imposed a very difficult and often insurmountable burden on an injured plaintiff. (Cases cited by defendants are in accord with *Carter v. Motor Lines, supra,* all arising prior to G.S. 20-71.1.)

Thereafter, the General Assembly enacted Ch. 494, Session Laws of 1951, entitled, "An Act To Provide New Rules of Evidence In Regard To The Agency Of The Operator Of A Motor Vehicle Involved In Any Accident." This statute, now codified as G.S. 20-71.1, did not change the basic rule as to liability. It did establish a new rule of evidence, changing radically the requirements as to what the injured plaintiff must show in evidence in order to have his case passed on by the jury. *Hartley v. Smith, supra; Parker v. Underwood, supra.*

Under G.S. 20-71.1, all now required for submission of the issue to the jury, is that the injured party show ownership of the motor vehicle, which may be done *prima facie* by proof that the motor vehicle was registered in the name of the person sought to be charged, and if ownership is established this constitutes *prima facie* evidence that "such motor vehicle was then being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment." *Hartley v. Smith, supra.*

A candid appraisal prompts the observation that in passing from the rule recognized in *Carter v. Motor Lines, supra,* to the rule prescribed by G.S. 20-71.1, the pendulum seems to have swung from one extreme to the other. For under G.S. 20-71.1, proof of ownership alone takes the case to the jury. It is not required that positive evidence be offered that the operator was then and there acting as employee or agent within the scope of his employment or agency. Moreover, it is not required that positive

evidence be offered that the operator was an employee or agent of the owner.

Evidence offered by defendants tends to show that defendant Wensil was the owner of the 1940 Dodge pick-up truck in defendant Garmon's possession in Matthews on the occasion of his arrest. Plaintiff's evidence tends to show that N. C. license plate attached thereto bore license number 841-730. Certificate of registration, offered by plaintiff, tends to show that defendant Wensil was the owner in 1951 of the 1940 Dodge pick-up for which this license was issued. By virtue of G.S. 20-71.1, proof of such registration was competent and constituted *prima facie* evidence of ownership. Defendants' assignment of error (AE 10) to its admission in evidence is without merit. Ownership, if established, under G.S. 20-71.1, was *prima facie* evidence that the truck was being operated by defendant Garmon as employee of defendant Wensil within the scope of his employment.

The trial judge instructed the jury, in relation to the third issue, that if plaintiff satisfied the jury by the greater weight of the evidence that defendant Wensil was the owner of the truck involved in causing injury to plaintiff, then the jury would consider the question of agency; and upon consideration thereof, the burden of proof rested upon plaintiff to satisfy the jury by the greater weight of the evidence that the operator of defendant Wensil's truck was then and there operating it as employee or agent of defendant Wensil and within the scope of his employment or agency.

When plaintiff has offered evidence of facts sufficient to give rise to a *prima facie* case, the ultimate issue is for the jury; and when the defendant offers evidence, which, if accepted, would establish that he is not legally responsible, the credibility of such evidence is for the jury. The significance of a *prima facie* case has been often discussed and authorities cited. *Ins. Co. v. Motors, Inc., ante,* 183, 81 S.E. 2d 416. The trial judge correctly stated the law in relation to the significance of a *prima facie* case; and assignments of error (AE 18, 19, 20) are without merit.

True, the only positive evidence as to the relationship between defendant Garmon and defendant Wensil was offered by the defendants. While to the effect that defendant Garmon was an employée of defendant Wensil in connection with his business, defendants' evidence tended to show explicitly that on 16 June, 1951, on the highway between Charlotte and Monroe, defendant Garmon was on a purely personal mission wholly unrelated to his employer's business. In *Travis v. Duckworth,* 237 N.C. 471, 75 S.E. 2d 309, it was held that proof of ownership of the tractor-trailer was *prima facie* evidence that the operator was then and there acting as agent and within the scope of such agency; that motion of nonsuit was properly overruled, the issue being for the jury; but a new trial was ordered because of the failure of the trial judge to give a peremptory

instruction to the effect that it would answer the issue of agency in the negative if it found the facts to be as the defendants' evidence tended to show, namely, that the operator was on a purely personal mission at the time of the collision. Correctly applying the law as stated in *Travis v. Duckworth, supra,* the trial judge instructed the jury as follows:

"Now, the Court charges you, as a matter of law, that if you believe the evidence of the defendants that he was sent from Kinston to Concord on business for the defendant Wensil, and that, having transacted the defendant Wensil's business, he was on his way back to Kinston, and had reached the town of Monroe, and that, having reached Kinston—I mean Monroe—having reached Monroe on his way back to Kinston, he then turned and drove the truck from Monroe to Charlotte on business for his own, and not on business for the defendant Wensil, and in pursuit of something entirely unrelated and disconnected with his employment, the Court charges you if you find those things to be true, it would be your duty to answer the third issue No."

In addition to the portion of the charge quoted above, the court restated the same proposition in other instructions. A careful reading of the charge gives the impression that it was made quite clear to the jury that if they believed the defendants' evidence relating to this issue it was their duty to answer the third issue, "No." Too, the trial judge repeatedly emphasized that the burden of proof on the issue rested and remained on plaintiff throughout the trial to establish agency at the time and in respect of the very transaction out of which plaintiff's injury arose. The charge in these respects was correct and adequate. Indeed, considered in its entirety, we find therein no error of law prejudicial to the defendants.

Defendants assign error (AE 2) to the admission in evidence of testimony by Andrew Jyachosky tending to show amounts paid by him to doctors, nurses, hospital, etc., in treatment of plaintiff, approximating $1,900.00. The bills and canceled checks were produced and checked by counsel for defendants. Jyachosky's testimony is that these payments were made from funds belonging to him and plaintiff, his wife, jointly. The total amount of these joint funds does not appear. Nor is there evidence as to the respective rights of the co-owners, as between themselves. There is evidence that plaintiff had been regularly employed as State Secretary for the Reserve Life Insurance Company since the latter part of 1946, and that her salary had been $225.00 per month. Whether her interest in these joint funds exceeded the amounts paid therefrom does not appear. Ordinarily, such expenses are proper elements of damages in a wife's tort action. *Helmstetler v. Power Co.,* 224 N.C. 821, 32 S.E. 2d 611. It does not appear that her husband's money was expended in discharge of these bills. In any event, under the circumstances disclosed

here, he would be estopped to recover in a separate action for these items of damage. Consequently, no error prejudicial to defendants is made to appear.

Defendants assign as error (AE 16) this excerpt from the portion of the charge relating to the first issue. "Now, this issue presents a question of fact. There is no law involved in that question. Was it the automobile of the defendant Wensil, or wasn't it? The Court does not consider any useful purpose to be served by reviewing the testimony of the witnesses."

The wording of the first issue is set out above. In his instructions, the trial judge submitted it, not on questions of negligence, proximate cause or agency, but solely on the question as to the identity of the truck involved in the incident causing plaintiff's injury. The second issue was: "If so, was said collision and resulting injuries proximately caused by the negligence of the defendant Garmon, as alleged in the Complaint?" Here the trial judge, in a charge to which no exception was taken, instructed the jury bearing upon the alleged negligence of the operator of the truck (Garmon) in forcing the Jyachosky car off the highway and causing it to collide with the parked car. The trial judge was certainly correct in stating that the first issue presented a question of fact. Perhaps his further statement, "There is no law involved *in that question,*" was unnecessary and rather sweeping in its implications. However, considered in context, we cannot conclude that this remark was prejudicial to defendants. It is plain that the jury understood what they had to decide concerning the first issue.

Defendants assign as error (AE 17) this excerpt from the portion of the charge relating to the third issue: "Now, it is alleged by the plaintiff and admitted by the defendant that a red Dodge panel truck belonging to the defendant Wensil and driven by the defendant Garmon was in the general vicinity or somewhere along Highway 74 between Charlotte and Monroe at the time plaintiff was injured." No objection was interposed to this statement when made, nor at the close of the charge when, in response to the court's inquiry, "Anything further, gentlemen?" counsel for defendant Wensil observed: "I don't believe anything that would be helpful at this time. You did forget to tell the jury that the court excused Mr. Funderburk (Garmon's separate counsel) for having another appointment." The reference to a "panel" instead of a "pick-up" truck was an obvious inadvertence. No one contended that a "panel" truck was involved. All the evidence tended to show that Garmon traveled on Highway #74 between 7:00 p.m. and 9:00 p.m. between Monroe and Charlotte. Plaintiff's evidence tended to show that he was driving the truck that caused her injury 3-3½ miles west of Monroe about 7:45 p.m. Defendants' evidence tended to show that Garmon was in or near Char-

lotte when plaintiff was injured. The respective positions of plaintiff and defendants were crystal clear. The quoted statement of the trial judge, considered alone, did not develop the precise contentions of the respective parties; but, considering the evidence and the charge in its entirety, there is no sound reason to believe that the jury was in any way misled as to defendants' position. Evidently, counsel for defendants did not so consider at the time for no suggestion was made that the trial judge modify or clarify the statement.

Other assignments of error are brought forward in the brief of defendants, supported by argument but without citation of authority. To discuss each would unduly extend this opinion. We have examined each assignment and find none of sufficient merit to constitute reversible error.

The preliminary statement of the evidence, necessarily incomplete, indicates the sharp conflicts in testimony. Such conflicts are for jury determination, to be resolved largely on the basis of the credibility of the several witnesses. The jury, had it rejected the evidence favorable to plaintiff or had it accepted the evidence favorable to defendants, might have reached a different conclusion. However, as to the facts, both the trial court and this Court are bounded by the jury's findings. True, in proper cases, the trial judge, in his discretion, may set the jury's verdict aside as being contrary to the greater weight of the evidence. This Court, upon appeal, is limited to a consideration of errors of law in the court below. No prejudicial error of law has been shown. The result is that the judgment of the court below will not be disturbed.

No error.

BARNHILL, C. J., concurring: There is grave error appearing in the record. But it is error committed by the jury. No error was committed by the presiding judge unless it was error on his part to decline to exercise his discretionary power to grant the motion to set aside the verdict. Thus he could have saved the situation. In the absence of prejudicial error committed by him, we are without authority to disturb the verdict and judgment entered thereon.

When a nonowner-operator of a motor vehicle, by his negligent operation thereof, injures the person or damages the property of another, G.S. 20-71.1 makes proof of the ownership of the vehicle *prima facie* evidence that the operator was, at the time, the agent or employee of the owner and was about his master's business, so as to render the owner liable in damages under the doctrine of *respondeat superior*. This fact, which the jury may, but is not compelled to infer from the mere proof of ownership, is not an inference of fact which naturally and necessarily follows proof of ownership. It is a bare, artificial inference manufactured by statute.

In this case it is not supported by a single fact or circumstance appearing of record. On the contrary, all the testimony and every fact and circumstance disclosed by the record tend to show that the operator was on a mission of his own and was at the time operating the vehicle without the knowledge, consent, or approval—either express or implied—of the owner. There was no effort to attack the reputation or impeach the testimony of any one of the witnesses who so testified. We must, therefore, assume they are persons of character and integrity. Yet the jury adopted the bare, artificial inference of fact permitted by the statute and found that it was sufficient to override and outweigh all the positive evidence to the contrary. While we may grant new trials for errors of law committed by the trial judge, we are without authority to correct this error in the verdict. The jury was the final arbiter of the facts. Therefore we must affirm a judgment which compels the defendant to pay plaintiff $18,000 which he should not be required to pay. This offends my every sense of justice and fair play. I can only say that it is most unfortunate that judicial officers should be placed in a position where they must deny relief against injustice in the name of the law. While we need some statute such as G.S. 20-71.1, this Act should be so amended as to afford the Court an opportunity to grant relief in a case of this kind.

Since the trial judge committed no error in the trial of the cause, I must, in compliance with my oath to administer the law as it is written, concede that the judgment entered must be affirmed. In so doing, I make my assent as negative as language will permit.

WINBORNE and PARKER, JJ., join in concurring opinion.