ROY JONES v. SILER CITY MILLS, INCORPORATED, ORIGINAL DEFEND-
ANT; MRS. ROY JONES, ADDITIONAL DEFENDANT.

(Filed 12 June, 1959.)

**1. Appeal and Error § 51—**

Where defendant introduces evidence, only the motion to nonsuit made at the close of all the evidence is to be considered.

**2. Sales § 15—**

Where goods are bought and sold for a particular use there is an implied warranty that the goods are reasonably fit for such use.

**3. Sales § 27— Circumstantial evidence of breach of implied warranty in sale of feed held sufficient.**

Plaintiff's evidence tending to show that defendant manufactured feed for broilers and for laying hens, that feed for broilers contained nicarbazin, that plaintiff purchased all his feed from defendant and purchased the feed in suit for laying mash, that abruptly egg production from plaintiff's flock dropped to about one-half, that the chickens moulted, that the color of the eggs changed from brown to white and were watery, together with expert testimony of two witnesses that nicarbazin should not be fed to laying hens and that only nicarbazin could have caused the results observed in plaintiff's flock *is held* sufficient to be submitted to the jury on the issue of breach of implied warranty that the feed was reasonably fit for the use contemplated by both parties, notwithstanding the absence of evidence that nicarbazin was upon analysis actually found in the chickens, eggs or feed.

**4. Same—**

Ordinarily the measure of damages for the breach of implied warranty is the damage proximately caused by such breach, but when, at the conclusion of the evidence, the parties stipulate the measure of damages, an instruction in strict accord with such stipulation will not be held for error.

APPEAL by defendant Siler City Mills, Incorporated, from *Preyer, J.*, November Term, 1958, of WILKES.

Civil action to recover for damages to plaintiff's flock of laying chickens allegedly caused by their consumption of feed sold by Siler City Mills, Incorporated, hereafter called defendant, for plaintiff's use in raising said chickens.

Plaintiff alleged that the feed contained nicarbazin, a chemical sold under the trade name of Nicarb; that it was not fit for use in feed for laying chickens; and that, on account of its harmful effects, there was a sharp drop in egg production, resulting in damages of $7,000.00. Plaintiff alleged (1) breach of express warranty, (2) breach of implied warranty, and (3) negligence; but, as indicated below, the issues submitted relate to alleged breach of implied warranty.

Defendant, answering, admitted the sale of the feed for consumption by plaintiff's flock of laying chickens, but denied that the condition of plaintiff's chickens was caused by any harmful element in the feed; and, as a counterclaim, defendant alleged that plaintiff and Mrs. Roy Jones, plaintiff's wife, were indebted to it in the amount of $3,316.37, exclusive of interest, to wit, the balance on their account for chickens, feed and supplies purchased by them from defendant.

Mrs. Roy Jones was made a party. In separate answers to defendant's said counterclaim, plaintiff and Mrs. Roy Jones denied that Mrs. Roy Jones had made any purchases from defendant and denied her liability for purchases made by plaintiff from defendant.

At the conclusion of the evidence, the court, in its discretion, allowed plaintiff to amend his complaint. In the amendment, plaintiff alleged that, "in addition to the damages hereinbefore alleged in said original complaint," "the poultry which he had, consisting of 3,980 hens," was damaged by their consumption of feed containing nicarbazin; that immediately prior to such consumption they were reasonably worth $12,000.00 but immediately thereafter were reasonably worth $4,000.00; and that he was entitled to recover $8,000.00 on account thereof.

The following appears in the agreed case on appeal: "After conclusion of the evidence and before the charge of the Court, it was agreed between counsel for plaintiff and counsel for defendant that the measure of damages for the plaintiff should be determined by the difference in the reasonable market value of the chickens immediately before the drop in production and the reasonable market value immediately thereafter."

The court submitted and the jury answered these issues: "1. Was there an implied warranty that the feed was reasonably fit for the purpose for which it was sold and purchased, as alleged in the Complaint? Answer: Yes. 2. If so, was there a breach of said implied warranty by the defendant, Siler City Mills, Inc., as alleged in the Complaint? Answer: Yes. 3. If so, what amount of damages, if any, is the plaintiff, Roy Jones, entitled to recover from the defendant? Answer: $7,000.00. 4. In what amount, if any, is the plaintiff, Roy Jones, indebted to the defendant, Siler City Mills, Inc.? Answer: $3,104.37. 5. In what amount, if any, is Mrs. Roy Jones indebted to the defendant, Siler City Mills, Inc.? Answer: No."

Judgment was entered, providing: (1) ". . . that the plaintiff have and recover judgment against the defendant in the amount of $7,-000.00"; (2) ". . . that the defendant have and recover judgment against the plaintiff in the amount of $3,104.37"; (3) ". . . that the plaintiff be taxed with one-half the cost and that the defendant be taxed with one-half the cost."

Defendant excepted and appealed, assigning errors.

*McElwee & Ferree for plaintiff, appellee.*
*W. G. Mitchell for defendant Siler City Mills, Incorporated, appellant.*

BOBBITT, J. Defendant assigns as error the court's denial of its motions for judgment of nonsuit. Since defendant offered evidence, we consider only the ruling on the motion made by defendant at the close of all the evidence. G.S. 1-183; *Spaugh v. Winston-Salem,* 249 N.C. 194, 196, 105 S.E. 2d 610.

Uncontradicted evidence is to the effect that the feed was sold and purchased for a particular use, namely, to be fed to plaintiff's flock of laying chickens. Under these circumstances, there was an implied warranty that the feed was reasonably fit for the use contemplated by both seller and purchaser. *Poovey v. Sugar Co.,* 191 N.C. 722, 133 S.E. 12, and cases cited therein; *Swift & Co. v. Aydlett,* 192 N.C. 330, 135 S.E. 141; *Keith v. Gregg,* 210 N.C. 802, 188 S.E. 849. Indeed, defendant did not except to the court's peremptory instruction in plaintiff's favor on the first issue.

Defendant contends there was no evidence sufficient to support a finding that it had breached said implied warranty. Defendant cites *Poovey v. Sugar Co., supra,* where *Brogden, J.,* observed that the law should not be so interpreted as to "unloose a jury to wander aimlessly in the fields of speculation." But the evidential facts in *Poovey v. Sugar Co., supra,* are quite different from those now considered.

There was evidence tending to show the facts narrated below.

Plaintiff purchased day-old chicks in October, 1956. They progressed satisfactorily. Production commenced in five to five and one-half months and increased until daily production exceeded 2,900 eggs. Then, within a period of about two weeks, late June — early July, 1957, production dropped from nearly 3,000 eggs daily to 1,500 daily. There was a further gradual drop in production. Later, plaintiff sold the chickens "for eating, table use."

Plaintiff's dealings were with defendant's North Wilkesboro branch of which Coley Jones was manager. Plaintiff notified Coley Jones of the sharp drop in egg production. W. D. Jester, a poultry expert, specializing in poultry diseases, was sent to investigate. W. D. Jester went to plaintiff's farm, talked with plaintiff and made his investigation.

Along with the sharp drop in production in late June — early July, plaintiff's hens went into a moult, losing their feathers. The color of the egg shells changed from brown to white. Inside, the yellow and white ran together. Changes occurred in the ovaries and the ovaducts of the hens.

All of the feed consumed by plaintiff's hens was supplied by defendant. There was no change in the feeding pattern except that a

short time prior to late June — early July worm medicine had been mixed in the feed.

W. D. Jester was offered by plaintiff. He testified to conditions he found when he visited the farm and inspected plaintiff's hens. He also testified, without objection, to certain statements then made to him by plaintiff. Based thereon, he testified that in his opinion the drop in production and the color and watery consistency of the eggs were caused by "a substance in there that should not have been in the laying feed."

Plaintiff offered Dr. Franklin Joseph Hein, an employee of the North Carolina Department of Agriculture, then in charge of the Poultry Pathology Diagnostic Laboratory in North Wilkesboro.

Predicated on the finding by the jury of facts substantially as stated above, each was asked his opinion as to what could have caused the drop in egg production in late June — early July, 1957. Jester answered: "I thought it was Nicarbazin." Dr. Hein answered: "My opinion would be that they had been poisoned with nicarbazin." He went on to explain that he did not know of any condition other than nicarbazin poisoning that would cause these pathological changes.

Nicarbazin is used to prevent or control a disease of young chickens known as coccidiosis and is added to feed for broilers, that is, chicks raised in brooder houses and sold at from eight to ten weeks as frying size chickens. L. C. Howell, defendant's employee and witness, testified: "It is a fact that our company never knowingly feeds any nicarbazin in layer mash to chickens." Jester testified that a worm preparation "should not be nicarbazin."

Defendant, in its North Wilkesboro plant, used the same mixer to mix feed for broilers and feed for layers. Plaintiff testified that Coley Jones, defendant's North Wilkesboro manager, stated to him that "there could have been some broiler feed mixed by mistake."

Defendant's evidence tended to show the precautions taken in the mixing of feed at its North Wilkesboro plant. Defendant's evidence also tended to show that all of the symptoms found in plaintiff's hens could not have been caused by nicarbazin and that certain of the symptoms found in plaintiff's hens could have been caused by a variety of other factors. Dr. W. H. Rhodes, an employee of the manufacturer of Nicarb, was offered by defendant. He testified: "In these hens, at a .0125% of consumption of nicarbazin there is no doubt but what there could have been a drop in production provided it was fed long enough. There is no doubt whatsoever but that the feeding of nicarb at that level would change the color of the eggs from brown

to white." He had previously testified: "The normal use level for broilers is .0125%"

Defendant stresses the absence of evidence tending to show that nicarbazin was, upon analysis, actually found in the chickens, eggs or feed. It is noted that defendant continuously supplied feed to plaintiff and there is no contention that any specific shipment of feed caused the damage. Jester, who investigated for defendant, "just made a field examination." He didn't "make any kind of laboratory tests . . . any kind of blood tests or take any samples of blood or anything like that." Under the circumstances, the mere fact that there is no evidence that an analysis was made by either party may not be regarded as fatal to plaintiff's case.

Here we are concerned with the rule applicable to the sufficiency of circumstantial evidence in a civil action. See *Hat Shops v. Insurance Co.*, 234 N.C. 698, 707, 68 S.E. 2d 824, and cases cited; *Jyachosky v. Wensil*, 240 N.C. 217, 224, 81 S.E. 2d 644. In respect of the sufficiency of circumstantial evidence to warrant a finding of negligence, see *Frazier v. Gas Co.*, 247 N.C. 256, 100 S.E. 2d 501.

The evidence of damage to plaintiff's hens is plenary. Was the evidence sufficient to support a finding that the feed was not reasonably fit for the purpose for which it was sold and used? If the feed contained nicarbazin, the answer is, "Yes." When considered in the light most favorable to plaintiff, we are of opinion that the circumstantial evidence, together with the opinion testimony of Mr. Jester and Dr. Hein, was sufficient to support a finding that the feed consumed by plaintiff's hens contained nicarbazin. Hence, defendant's motion for judgment of nonsuit was properly overruled.

Defendant assigns as error the court's failure to instruct the jury, in relation to the third issue, that plaintiff was entitled to recover only such damages *as were proximately caused* by its breach of implied warranty. This assignment is based on exception set forth in case on appeal.

Ordinarily, the damages recoverable for breach of implied warranty would be the damages proximately caused by such breach; and it would be the duty of the trial judge, in his instructions relating to the measure of damages, to so charge the jury. However, as indicated below, the trial took a somewhat irregular course.

In his original complaint, plaintiff asserted damages for loss of eggs, in respect of quantity and quality, and much evidence was offered in relation thereto. Plaintiff also offered evidence as to the fair market value of the chickens before and after the drop in production in late June — early July.

At the conclusion of the evidence, (1) the complaint was amended, and (2) the parties stipulated as to the measure of damages, all as set forth in our preliminary statement of facts.

The court instructed the jury on the third issue in strict accordance with the stipulation. Obviously, the court understood that, under the stipulation, the only question for jury determination was the difference in the market value of the chickens *caused by the drop in production.* At the conclusion of the charge, the court asked: "Are there any further instructions as to the law or further contentions which you would like me to give?" Defendant's counsel answered: "No, sir." Under these circumstances, the court's failure to go beyond the language of the stipulation does not constitute ground for a new trial. The court's instructions were based squarely on the stipulation, not on principles of law that were or may have been applicable absent such stipulation.

The remaining assignments of error brought forward and argued in defendant's brief have been carefully considered. Discussion thereof in detail would serve no useful purpose. Suffice to say, none discloses error of law deemed sufficiently prejudicial to justify a new trial.

It is noteworthy that plaintiff's account, the basis of defendant's recovery on its counterclaim, includes charges for the feed which allegedly caused the damage to plaintiff's flock of laying hens.

No error.