EASTERN CAROLINA FEED & SEED COMPANY, INC. v.
JOHN REX MANN.

(Filed 27 February 1963.)

1. Sales §§ 6, 14c—

A counterclaim alleging that plaintiff furnished defendant feed under contract, with knowledge that it was to be used to feed chickens for the production of eggs, that the feed contained deleterious substances that

caused defendant's chickens to lay fewer eggs and caused a substantial part of those laid to be unfit for human consumption, and alleging loss of profits, states a cause of action, and plaintiff's demurrer thereto should be overruled, since ordinarily there is an implied warranty that feed is reasonably fit for the use contemplated by both the purchaser and seller.

**2. Trial § 33—**

Even when the parties waive a recapitulation of the evidence, it is the duty of the trial court, in a complicated case with conflicting evidence on crucial aspects, to state the evidence to the extent necessary to enable the court to apply the law to the varying factual situations presented by the evidence, and a statement of the evidence by the court only in the form of the contentions of the parties is insufficient. G.S. 1-180.

APPEAL by defendant from *Bundy, J.,* December Term 1962 of PASQUOTANK.

This action was instituted on 18 July 1962, the plaintiff in its original complaint alleging that the parties entered into a written contract on 24 April 1959, whereby the defendant was to construct a chicken house on his farm and the plaintiff was to furnish the chickens, feed and medical supplies and would in turn reimburse the defendant for caring for the chickens.

The plaintiff also alleged in the original complaint that the parties to this action entered into another written agreement on 4 May 1959, whereby, *inter alia,* plaintiff agreed to furnish defendant poultry feed necessary to properly feed and care for 1,200 pullets and to extend credit for such purchases not to exceed $2,600. Plaintiff alleged that under this 4 May 1959 agreement the defendant was indebted to it in the sum of $3,048.06, and prayed judgment in said amount.

The defendant filed an answer to the original complaint, setting out that the agreement entered into on 24 April 1959 was partly written and partly oral, pursuant to which defendant was to raise young chickens for the plaintiff from the age of about one day old until just before they became laying pullets, and that the plaintiff furnished no chickens whatsoever under said agreement; that the defendant incurred an indebtedness of approximately $4,700 in the erection of the aforesaid chicken house, which is of no value to him; that the chicken house was erected in reliance upon plaintiff's promise that the defendant would be paid for his services not less than $50.00 per week and for such period of time as would enable him to pay for the chicken house from the amounts paid him.

The defendant set up a counterclaim in which he denied the execution of the paper writing dated 4 May 1959, alleging that the only papers he signed were in blank regarding the erection of a chicken house

and the loan to be secured in connection therewith; that the plaintiff in November 1958 placed 1,200 white Leghorn day-old chickens with the defendant; that these were the only chickens ever delivered by the plaintiff to the defendant (and this is admitted); that the plaintiff was to furnish the necessary feed, medical and other necessary supplies for raising said chickens and the defendant was to furnish only the area where the chickens were to be raised and the labor incident thereto and incident to the delivery to the plaintiff of the eggs to be derived from said poultry. That after the payment of fees and other advancements to be made by the plaintiff, the balance was to be paid to the defendant for his services. He alleged that many of the eggs became unmarketable because of deleterious substance or substances in the feed furnished by the plaintiff, causing the chickens to lay fewer eggs and a substantial part of those laid to be unfit for human consumption, resulting in a loss of profit to the defendant of not less than $500.00; that the defendant expended $400.00 in buying extra feed in an effort to make the eggs marketable; that this additional feed was purchased with the knowledge of the plaintiff and that he is entitled to be reimbursed therefor.

A second counterclaim was set up alleging damages in the sum of $4,714.60, resulting from the failure of the plaintiff to furnish chickens, feed and medical supplies for the operation of the newly constructed chicken house as it contracted to do.

When the case was called for trial at the October Term 1962, plaintiff moved for leave to file an amended complaint, whereby plaintiff might sue defendant on open account. The motion was allowed and plaintiff required to submit a bill of particulars as to said open account.

Defendant filed answer to the amended complaint and set up both counterclaims as alleged in his original answer.

When the case was again called for trial, the plaintiff filed a written demurrer to the defendant's first counterclaim. The demurrer was sustained as to the alleged profits in the sum of $500.00 to which ruling the defendant excepted. The court overruled the demurrer as to the alleged balance owing the defendant for moneys expended in the sum of $400.00 in plaintiff's behalf.

Both parties offered evidence in support of their respective allegations.

The jury answered the issues submitted as follows:

"(1) Is the defendant indebted to the plaintiff because of any matters and things alleged in the amended complaint?

"ANSWER: Yes.

"(2) If so, in what amount?

"ANSWER: $2,600.00.

"(3) In what amount, if any, is the plaintiff indebted to the defendant because of the matters and things alleged in defendant's first counterclaim as to advancements made by him?

"ANSWER: $ No.

"(4) Did the plaintiff contract and agree with the defendant as alleged in the defendant's second counterclaim?

"ANSWER: No.

"(5) If so, did the plaintiff breach said contract, as alleged in said counterclaim?

"ANSWER: No.

"(6) What amount of damages, if any, is the defendant entitled to recover of the plaintiff on said counterclaim?

"ANSWER: $ No."

The defendant appeals, assigning error.

*LeRoy, Wells & Shaw for plaintiff appellee.*
*W. C. Morse, Jr., and John H. Hall for plaintiff appellant.*

DENNY, C.J. Ordinarily, there is an implied warranty that feed is reasonably fit for the use contemplated by both the seller and the purchaser. *Jones v. Mills, Inc.,* 250 N.C. 527, 108 S.E. 2d 917; *Keith v. Gregg,* 210 N.C. 802, 188 S.E. 849; *Poovey v. Sugar Co.,* 191 N.C. 722, 133 S.E. 12.

There can be no denial of the fact that the plaintiff knew for what purpose the feed furnished or sold by it was being used by the defendant. Therefore, in our opinion, the ruling sustaining the demurrer to the defendant's first counterclaim on the ground that no cause of action is stated with respect to the loss of profits or damages growing out of the sale of chicken feed to the defendant, which it is alleged contained deleterious substance or substances that caused the chickens involved to lay fewer eggs and a substantial part of those laid to be unfit for human consumption, was erroneous, and the defendant's exception and assignment of error challenging said ruling will be upheld on authority of *Jones v. Mills, Inc., supra,* and *Perkins v. Langdon,* 237 N.C. 159, 74 S.E. 2d 634, and cited cases.

The defendant assigns as error the failure of the court in its charge "to declare and explain the law arising on the evidence upon the first and second issues in that the court did not state the evidence on behalf

of defendant to the extent necessary to explain the application of the law thereto, especially his evidence tending to show that as to a part of said account he had paid the same in full, and that as to the remainder of said account it was understood and agreed between the parties that the chickens were the property of the plaintiff and that the sole source of the payment for the feed and supplies was to be the eggs produced from the original 1200 pullets and from the sale of the pullets themselves, and that he, the defendant, was not to be liable for any monetary payment with respect to the feed and other items supplied by the plaintiff for and on account of said 1200 chicks or pullets."

Other similar assignments of error to the charge of the court bearing on the first and second issues, as well as other issues submitted, have been preserved and in our opinion are well taken and must be sustained.

The parties hereto waived a recapitulation of the evidence, whereupon the trial judge in his charge stated the evidence only in the form of contentions. We have repeatedly held that in a complicated case where the evidence is conflicting this is not a sufficient compliance with the requirements of G.S. 1-180.

In *Brannon v. Ellis,* 240 N.C. 81, 81 S.E. 2d 196, the parties waived a recapitulation of the evidence by the court and the jury was so informed. Even so, we said: " * * * (S)uch waiver did not relieve the court of the duty to declare and explain the law arising on the evidence of the respective parties. *Mack v. Marshall Field & Co.,* 218 N.C. 697, 12 S.E. 2d 235. It is not sufficient for the court to read a statute or to state the applicable law bearing on an issue in controversy, and leave the jury unaided to apply the law to the facts. *Chambers v. Allen,* 233 N.C. 195, 63 S.E. 2d 212; *S. v. Sutton,* 230 N.C. 244, 52 S.E. 2d 921; *Lewis v. Watson,* 229 N.C. 20, 47 S.E. 2d 484, and cited cases.

"It is the duty of the court to state the evidence 'to the extent necessary to explain the application of the law' arising thereon. G.S. 1-180. In both civil and criminal cases, it is imperative, in the charge to the jury, that the law be declared, explained and applied to the evidence bearing on the substantial and essential features of the case without any request for special instructions. *Hawkins v. Simpson,* 237 N.C. 155, 74 S.E. 2d 331; *Bank v. Phillips,* 236 N.C. 470, 73 S.E. 2d 323; *Childress v. Motor Lines,* 235 N.C. 522, 70 S.E. 2d 558; *Howard v. Carman,* 235 N.C. 289, 69 S.E. 2d 522; *Chambers v. Allen, supra; Flying Service v. Martin,* 233 N.C. 17, 62 S.E. 2d 528; *Smith v. Kappas,* 219 N.C. 850, 15 S.E. 2d 375; *Ryals v. Contracting Co.,* 219 N.C. 479, 14 S.E. 2d 531; *Mack v. Marshall Field & Co., supra; Spencer v.*

*Brown*, 214 N.C. 114, 198 S.E. 630; *Williams v. Coach Co.*, 197 N.C. 12, 147 S.E. 435.

"The court in the charge under consideration did not state the evidence to the extent necessary to explain the application of the law arising thereon as required by G.S. 1-180. In fact, no evidence was stated except in the form of contentions, which does not meet the requirements of the statute. *Bank v. Phillips, supra; Howard v. Carman, supra; Mack v. Marshall Field & Co., supra,* * * *" *Sugg v. Baker*, 258 N.C. 333, 128 S.E. 2d 595; *Bulluck v. Long*, 256 N.C. 577, 124 S.E. 2d 716; *S. v. King*, 256 N.C. 236, 123 S.E. 2d 486.

In the case of *S. v. Friddle*, 223 N.C. 258, 25 S.E. 2d 751, Barnhill, J., later C.J., in considering a question similar to that now before us, said: "The chief object contemplated in the charge of the judge is to explain the law of the case, to point out the essentials to be proved on the one side and on the other, and to bring into view the relation of the particular evidence adduced to the particular issue involved. *Bird v. U.S.*, 180 U.S. 356, 45 L. Ed. 570. The judge should segregate the material facts of the case, array the facts on both sides, and apply the pertinent principles of law to each, so that the jury may decide the case according to the credibility of the witnesses and the weight of the evidence. *S. v. Rogers*, 93 N.C. 523; *S. v. Jones*, 87 N.C. 547; *Guyes v. Council*, 213 N.C. 654, 197 S.E. 121. A failure to do so must be held for reversible error."

In light of the foregoing decisions and authorities herein cited, we hold the defendant is entitled to a new trial, and it is so ordered.

New trial.