NITA HARTLEY, ADMINISTRATRIX OF THE ESTATE OF LLOYD HARTLEY, DECEASED, v. MRS. B. G. SMITH AND THOMAS GILBERT POPE.

(Filed 15 January, 1954.)

**1. Appeal and Error § 40i—**

In passing upon an exception to the refusal of the trial court to grant a motion for involuntary nonsuit, the evidence supporting plaintiff's cause must be considered in the light most favorable to him, and any evidence which tends to contradict or impeach such evidence must be disregarded.

**2. Automobiles §§ 8i, 18h (2)—Notwithstanding that vehicles approach intersection at same time, driver on right may be negligent in driving at excessive speed.**

Nonsuit should not be entered even though plaintiff's evidence discloses that the two vehicles approached an intersection within a municipality at approximately the same time, that defendant's vehicle approached the intersection from the right of plaintiff's intestate, and that defendant's vehicle ran into the side of intestate's vehicle at the intersection of their proper lanes of travel, when plaintiff's evidence further tends to show that intestate's vehicle was being operated at a lawful speed and that defendant's vehicle, as disclosed both by testimony and the physical facts at the scene, was being operated at excessive speed, since the testimony, if ac-

cepted by the jury, supports an inference that except for defendant's speed, intestate reached the intersection in ample time to have crossed in safety without creating an unnecessary traffic hazard.

**3. Automobiles § 18g (5)—**

The fact that after the collision, a vehicle ran into a house more than twenty-five feet from the sidewalk is not conclusive on the question of the driver's lack of control when the evidence discloses that the driver was fatally injured in the collision.

**4. Automobiles § 24½ a—**

An admission in the answer that the *feme* defendant owned the car and that at the time of the collision it was being driven by her son who frequently drove the car with her consent, knowledge and approval is an admission on the issue of *respondeat superior* binding upon the parties without the necessity of introducing the admission in evidence.

**5. Pleadings § 25½—**

The admission in the answer of a material fact specifically alleged in the complaint which constitutes the basis of one of the issues, establishes such fact for the purposes of the trial, and therefore the introduction in evidence of the admission is not required.

**6. Automobiles § 24½ e—**

An admission of the ownership of one of the vehicles involved in a collision is sufficient to make out a *prima facie* case of agency sufficient to support, but not to compel, a verdict against the owner under the doctrine of *respondeat superior* for damages proximately caused by the negligence of the driver. G.S. 20-71.1.

**7. Same—**

G.S. 20-71.1 provides that proof of registration is *prima facie* proof of ownership, and that proof of ownership is *prima facie* proof of agency.

**8. Automobiles § 24½ f: Appeal and Error § 39f—**

Where plaintiff relies upon an admission of ownership of the other vehicle involved in the collision to support the application of the doctrine of *respondeat superior*, the court is required to analyze and explain the provisions of G.S. 20-71.1 as a part of the law of the case, but inadvertence of the court in charging the effect of registration rather than the effect of the admitted ownership, even though error, is harmless. G.S. 1-180.

**9. Same—**

Where under the issue of whether intestate was injured and killed by the negligence of the owner of the other vehicle involved in the collision, the court instructs the jury to the effect that such defendant's admission of ownership is sufficient to send the case to the jury and support a finding against the defendant upon the issue, the instruction must be held for prejudicial error.

**10. Appeal and Error § 39f—**

An erroneous instruction upon a material aspect of the case must be held for reversible error notwithstanding that in other portions of the

charge the court may have correctly instructed the jury as to the law on such aspect.

**11. Trial § 31b—**

An erroneous statement of the law, even though made in stating a contention of a party, constitutes prejudicial error.

**12. Appeal and Error § 6c (5)—**

An exception to a portion of the charge stating several propositions of law will not be held ineffectual when the exception presents the sole question of whether the court correctly construed and applied a pertinent statute to the facts of the case.

**13. Automobiles § 24½f—**

An instruction to the effect that if the jury found that the operator of the vehicle was guilty of negligence proximately causing the collision, the jury should answer in the affirmative the issue as to the liability of the owner of the vehicle, must be held for reversible error.

APPEAL by defendants from *Frizzelle, J.,* May Term, 1953, HARNETT. New trial.

Civil action to recover compensation for the wrongful death of plaintiff's intestate resulting from an intersection motor vehicle collision.

As plaintiff's intestate was one of the actors in the unfortunate occurrence which resulted in his death, we may more conveniently refer to him as the plaintiff in summarizing the facts and discussing the assignments of error.

About 7:00 p.m. on 4 July 1952, Hartley was operating a Chevrolet pickup truck southwardly on South Washington Avenue, approaching East Pearsall Street, in the town of Dunn. At or about the same time, defendant Pope was operating the Mercury automobile of his mother, defendant Smith, in an easterly direction on East Pearsall Street, approaching the same intersection. Thus Pope was to the right of Hartley. Whether they approached the intersection at approximately the same time is one of the controverted facts.

No stop signs or other traffic signs were erected at or near the intersection of either street. Therefore, the rights of motorists approaching said intersection at approximately the same time were and are controlled by the rule that "the motorist on the right has the right of way." G.S. 20-155.

Both streets are paved and each is approximately thirty feet wide. They intersect at right angles.

Each motorist was traveling on his own right-hand side of the highway. Just as Hartley's truck got almost astraddle Pope's lane of travel, the left front part of Pope's vehicle collided with the truck, striking it about the hinges of the door to the cab, causing the truck to veer to the left, cross

the curb and sidewalk, cross the yard of a house set back about twenty-five feet from each street, and strike the underpinning of the house, or the house itself. One witness testified it struck the underpinning; another, that it struck the house. At least, the house or underpinning was dislocated a fraction of an inch. The Mercury, after striking the truck, also crossed the curb and sidewalk, knocked down the cement street marker, and skidded into the same yard, stopping about five or six feet from the sidewalk. The brake or skid marks "began in the southwest corner of the intersection about three to five feet south of the center of the intersection," and extended a distance of forty-two feet to the rear of the Mercury sitting in the yard. These marks indicated the Mercury was traveling sidewise rather than straight forward. The left front of the Mercury was damaged but its right headlight was not broken.

Hartley received serious injuries which caused his death on 7 July—three days later.

There was testimony tending to show that the two vehicles were traveling at about the same speed—thirty to thirty-five, thirty-five to forty m.p.h.—and approached the intersection "about the same time." "It looked like they both came to the intersection about the same time, and that neither decreased their speed."

On the other hand, one witness testified Pope was traveling "60 m.p.h.," "at least 60 m.p.h." Another stated the Mercury was traveling thirty-five m.p.h. when it crossed Magnolia Street two blocks from the collision, and that it "picked up speed" as it approached Washington Avenue. The maximum speed limit in that area was thirty-five m.p.h.

Each motorist was traveling on his own right-hand side of the highway so that the collision occurred just east of the center line of South Washington Avenue and south of the center line of East Pearsall Street.

Issues were submitted to and answered by the jury as follows:

"1. Was the plaintiff's intestate injured and killed by the negligence of the defendant Mrs. B. G. Smith, as alleged in the Complaint?

"Answer: Yes.

"2. Was the plaintiff's intestate injured and killed by the negligence of the defendant Thomas Gilbert Pope?

"Answer: Yes.

"3. Did the plaintiff's intestate by his own negligence contribute to his injury and death?

"Answer: No.

"4. What amount of damage is the plaintiff entitled to recover on account of the wrongful death of her intestate?

"Answer: $13,000.00.

"5. What amount of damage, if any, is the plaintiff entitled to recover on account of the mental and physical suffering of her intestate between the time of his injury and his ensuing death?

"Answer: $2,500.00."

The court below signed judgment on the verdict and defendants appealed.

*Ruark, Ruark & Moore and Wilson & Johnson for plaintiff appellee.*
*Salmon & Hooper for defendant appellants.*

BARNHILL, J.    Both the oral and physical testimony tend to show that the collision occurred within the intersection of South Washington Avenue and East Pearsall Street.    Therefore it appears beyond peradventure that the two vehicles in fact reached the intersection at approximately the same time.    No witness tendered by plaintiff testified that Hartley reached and entered the intersection at a time when Pope was a sufficient distance away to furnish reasonable grounds for him to assume, and that he did assume, that he could cross the intersection in safety, ahead of Pope's vehicle, without creating an unnecessary traffic hazard. Indeed, there is no evidence, either oral or physical, such as skid marks, tending to show that Hartley ever saw Pope before the vehicles collided. A witness testified the two vehicles were traveling "at about the same speed" and approached the intersection "about the same time."    Even so, on this record, the exception to the refusal of the court to enter judgment of nonsuit is untenable.    The testimony affords some evidence tending to show that Hartley was not under the duty to slow down and, if necessary, stop and yield the right of way to Pope.    The weight and credibility to be accorded this testimony is for the jury to decide.

It is axiomatic with us that in deciding the merits of an exception to the refusal of the trial court to grant a judgment of involuntary nonsuit we must consider the testimony in the light most favorable to the plaintiff and disregard any evidence which tends to contradict or impeach such testimony.    When the testimony appearing in this record is so considered, it is made to appear that Hartley was traveling at a speed of only thirty or thirty-five m.p.h.—within the maximum limit allowed in a residence district—while Pope was traveling at least sixty m.p.h.; that Pope did not apply his brakes until the front part of his automobile had entered the intersection, and that although Pope's vehicle ran into the side of Hartley's truck, which must have checked or retarded his speed to a considerable extent, he skidded forty-two feet over the curb, across the sidewalk, knocked down a cement street marker and stopped several feet inside the yard of a house on the lot located at the southeast corner of the intersection.    This testimony, if accepted by the jury as representing the

truth of the unfortunate occurrence, will support an inference that Pope was operating his vehicle at an excessive rate of speed and that, except for such speed, Hartley reached the intersection in ample time to cross in safety without creating an unnecessary traffic hazard.

It is true the truck traveled—one witness said was knocked—across the sidewalk and yard and ran into the house more than twenty-five feet from the sidewalk. But Hartley received fatal injuries. They may have been inflicted at the time the two vehicles collided. Therefore, on the question of Hartley's apparent lack of control of his truck, *Bailey v. Michael,* 231 N.C. 404, 57 S.E. 2d 372, and *Yost v. Hall,* 233 N.C. 463, 64 S.E. 2d 554, are controlling.

Defendants admit in their answer that defendant Smith owns the 1951 Mercury sedan automobile being operated by her son, defendant Pope, at the time of the collision, "and that the defendant Thomas Gilbert Pope frequently drove the same by and with the consent, knowledge and approval of the defendant Mrs. B. G. Smith . . ." Since this was the admission of a fact which establishes, *prima facie,* the agency of Pope—a fact at issue—we are of the opinion it was not necessary for plaintiff to offer it in evidence. *McCaskill v. Walker,* 147 N.C. 195; *Leathers v. Tobacco Co.,* 144 N.C. 330; *Barbee v. Davis,* 187 N.C. 78, 121 S.E. 176; *Wells v. Clayton,* 236 N.C. 102, 72 S.E. 2d 16; *Royster v. Hancock,* 235 N.C. 110, 69 S.E. 2d 29; *Light Co. v. Sloan,* 227 N.C. 151, 41 S.E. 2d 361; *S. v. Martin,* 191 N.C. 401, 132 S.E. 14.

*Connor, J.,* speaking for the Court in *Leathers v. Tobacco Co., supra,* says:

"It is true that for the purpose of availing himself of admissions not responsible (*sic*) to nor called for by the specific allegations in the former pleadings, but made by way of recital, the party relying upon them must put them in evidence, the reason given in *Smith v. Nimocks,* 94 N.C. 243, and cases in which it is cited, being that it is but fair to give the party making such admissions an opportunity to explain them . . . When, however, the plaintiff, in making a 'plain and concise statement of facts constituting a cause of action,' sets out a date or other material fact, and the defendant, being thus fully informed of the allegation by the plaintiff, expressly admits such material fact so alleged, we can see no good reason why the Court may not take such admission as settling such fact for all purposes connected with the trial. It must be conceded that the decisions heretofore made in respect to admissions which come within the rule announced in *Smith v. Nimocks* do not so clearly mark the line of distinction as might be desired. The difficulty experienced in doing so is manifest, but we think it safe to say that when a material fact is alleged in the complaint and admitted in the answer—a fact the denial of which would have presented an issuable controversy in the cause—it may for the

purpose of the trial be taken as true. *Cui bono* submit to the jury an issue or offer proof of something solemnly admitted to be true?"

Plaintiff offered no testimony tending to show that at the time of the collision Pope was the agent or employee of Mrs. Smith and was about his master's business at the time of the collision. He sues on the theory the Mercury was a "family purpose" automobile and that Pope was a member of Mrs. Smith's family, and, on this aspect of the case, he relies solely on the rule of evidence created by G.S. 20-71.1 which makes proof of ownership *prima facie* proof of agency.

As to defendant Smith, these admissions make out a *prima facie* case of agency which will support, but does not require, a verdict against her, under the doctrine of *respondeat superior,* for any damages assessed against Pope. G.S. 20-71.1.

That statute, ch. 494, S.L. 1951, G.S. 20-71.1, provides that:

"(a) In all actions to recover damages for injury to the person or to property or for the death of a person, arising out of an accident or collision involving a motor vehicle, proof of ownership of such motor vehicle at the time of such accident or collision shall be *prima facie* evidence that said motor vehicle was being operated and used with the authority, consent, and knowledge of the owner in the very transaction out of which said injury or cause of action arose. (b) Proof of the registration of a motor vehicle in the name of any person, firm, or corporation, shall for the purpose of any such action, be *prima facie* evidence of ownership and that such motor vehicle was then being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment; Provided, that no person shall be allowed the benefit of this section unless he shall bring his action within one year after his cause of action shall have accrued."

As this statute constitutes the law of the case on the question of the liability of defendant Smith, the court below undertook to analyze and explain it to the jury and apply it to the facts, as they relate to her liability under the doctrine of *respondeat superior,* as it was its duty to do. G.S. 1-180. In so doing, it instructed the jury as follows:

"The plaintiff contends, in answer to the defendants' contention that you cannot hold Mrs. Smith liable for that the plaintiff has not shown the relationship of a principal and agent, or master and servant, or employer and employee, and that the servant was about his master's business at the time, plaintiff contends *that this very statute was enacted and designed to render proof unnecessary.* That is to say, that by reason of this statute, particularly the portion of it reading, 'Proof of registration of a motor vehicle in the name of any person, firm or corporation, shall for the purpose of any such action, be *prima facie* evidence of owner-

ship and that such motor vehicle was then being operated by and under the control of a person for whose conduct the owner was legally responsible,' *not only sends this case to the jury upon the question of ownership and the responsibility of the owner for the conduct of the person operating the owner's automobile, but that it is prima facie evidence of ownership and responsibility of the owner, and that it is sufficient to support a finding favorable to the plaintiff under that first issue.* I have already instructed the jury as to the meaning of *prima facie* evidence. *The Court says it is sufficient to support a finding against a defendant* but that, after all, it is a matter for the jury. *It is sufficient to send the case to the jury. It is sufficient for the jury to predicate a finding favorable to the plaintiff upon,* but the jury is not compelled to do so, the burden still remaining upon the plaintiff to satisfy the jury upon the evidence, by its greater weight, that the plaintiff's allegations and contentions are correct." (Italics supplied.)

The statute was designed to create a rule of evidence. Its purpose is to establish a ready means of proving agency in any case where it is charged that the negligence of a nonowner operator causes damage to the property or injury to the person of another. *Travis v. Duckworth,* 237 N.C. 471, 75 S.E. 2d 309. It does not have, and was not intended to have, any other or further force or effect.

The two sections of the Act are identical in their objective. While the language used in section (a) is not as apt as that used in section (b), the intent and meaning of the two are the same. The caption of the Act, as well as the language thereof, so indicates. The caption reads: "AN ACT TO PROVIDE NEW RULES OF EVIDENCE IN REGARD TO THE AGENCY OF THE OPERATOR OF A MOTOR VEHICLE INVOLVED IN ANY ACCIDENT."

Manifestly, the Legislature used the language "was being operated and used with the authority, consent, and knowledge of the owner" to connote "under the direction and control of the owner," and when one acts under the direction and control of another, he is an agent or employee. *Hayes v. Elon College,* 224 N.C. 11, 29 S.E. 2d 137. Certainly it did not intend to give greater force and effect to mere proof of registration than to the admission or actual proof of ownership.

In short, proof of registration is *prima facie* proof of ownership, section (b), which in turn is *prima facie* proof of agency, section (a).

The court below inadvertently charged the jury under the "registration" rather than the "ownership" section of the Act. Since there was no admission or proof that the Mercury was registered in the name of Mrs. Smith, the court applied a provision of the law which is not applicable to the facts in this case. This, perhaps, under our decisions constitutes error. *Collingwood v. R. R.,* 232 N.C. 724, 62 S.E. 2d 87; *Childress v. Motor Lines,* 235 N.C. 522, 70 S.E. 2d 558; *Cook v. Hobbs,* 237

N.C. 490, 75 S.E. 2d 322. However, since proof of registration is *prima facie* proof of ownership, and ownership was admitted by Mrs. Smith the error, if any, was harmless.

The vice in the excerpt quoted from the charge rests in the language we have italicized. In so instructing the jury, the court inadvertently accorded the statute a meaning that goes far beyond its real purpose and intent.

As heretofore stated, this Act was designed and intended to, and does, establish a rule of evidence which facilitates proof of ownership and agency in automobile collision cases where one of the vehicles is operated by a person other than the owner. It was not "enacted and designed to render proof unnecessary," nor does proof of registration or ownership make out a *prima facie* case for the jury on the issue of negligence. Neither is it sufficient "to send the case to the jury," or "support a finding favorable to plaintiff under that first (negligence) issue," or "to support a finding against a defendant" on the issue of negligence. It does not constitute evidence of negligence. It is instead directed solely to the question of agency of a nonowner operator of a motor vehicle involved in an accident.

*Non constat* the statute, it is still necessary for the party aggrieved to allege both negligence and agency in his pleading and to prove both at the trial. *Parker v. Underwood, post,* 308.

It is urged, however, that the court later correctly charged the law in respect to G.S. 20-71.1. Even if this be conceded, we have consistently held that inconsistent instructions constitute prejudicial error requiring a new trial. *Templeton v. Kelley,* 217 N.C. 164, 7 S.E. 2d 380; *S. v. Overcash,* 226 N.C. 632, 39 S.E. 2d 810; *Sumner v. Sumner,* 227 N.C. 610, 44 S.E. 2d 40; *Dixon v. Brockwell,* 227 N.C. 567, 42 S.E. 2d 680; *S. v. Johnson,* 227 N.C. 587, 42 S.E. 2d 685; *Green v. Bowers,* 230 N.C. 651, 55 S.E. 2d 192.

The record discloses clear indication that the instruction was prejudicial. Mrs. Smith was neither the operator of nor a passenger on the Mercury. She was not even present at the scene of the collision. Yet the jury, in its answer to the first issue, found that Hartley's injury and death were proximately caused by the negligence of Mrs. Smith. And it cannot be said that the jury so answered the issue under the doctrine of imputed negligence, for the judge, in his charge, made no reference to that doctrine.

Neither is the fact the exceptive portion of the charge begins as the statement of a contention material. It is evident this was done as the basis for the direct and unequivocal statement that "the Court says it is sufficient to support a finding against a defendant," etc. In any event, this is immaterial, for the erroneous statement of the law, even in the

form of a contention, constitutes prejudicial error. *McKinney v. High Point,* this day decided, and cases therein cited. Nor is there more than one question or proposition of law included within the exception, and that is: Did the court below correctly construe and apply the statute, G.S. 20-71.1, to the facts in this case? It is evident that that question must be answered in the negative.

In its charge the court also instructed the jury in part as follows:

"If the plaintiff has satisfied the jury by the greater weight of the evidence that the defendant violated either of the statutes pleaded, and has further satisfied the jury by the greater weight of the evidence that such violation was the proximate cause of the injury and death, then the jury should answer the first issue YES; otherwise they should answer the issue No."

The error in this charge is self-evident. Pope was the nonowner operator. He is the one who, plaintiff alleges, was guilty of negligence which proximately caused the injury and death of her intestate. Yet the court made Pope's negligence, if established by the greater weight of the evidence, alone sufficient to warrant an adverse answer to the first issue which is directed to the alleged liability of Mrs. Smith, the owner.

Errors of the nature of those here discussed do not usually appear in the records of cases tried by the able and conscientious judge who presided over the trial in the court below. That these inadvertences did occur is understandable. In reading the instructions to the jury, it is made to appear that when the court began its charge the first two issues were combined, and, as one issue, was directed to the question of the negligence of the two defendants. He was interrupted by counsel and requested to divide the issues into two. He granted this request, but in so doing inadvertently failed to withdraw from the consideration of the jury what he had theretofore said or in any wise correct or modify his former statements.

There are other exceptive assignments of error we need not now discuss.

May we suggest that in cases of this type where plaintiff seeks to establish liability on the part of the nonowner operator and the owner on the theory that the owner is liable under the doctrine of *respondeat superior,* it will materially simplify the charge and tend to eliminate error if issues in substance as follows are submitted to the jury, to wit:

Were the plaintiff's injury and death proximately caused by the negligence of (the nonowner operator)?

If so, was he, at the time, the agent or employee of (the owner) and engaged in the discharge of his duties as such?

For the reasons stated there must be a

New trial.