GLENN H. FOX v. CLYDE W. ALBEA, Individually, and CLYDE W. ALBEA, Executor of the Estate of LORENE KERR ALBEA.

(Filed 12 June. 1959.)

1. **Automobiles § 54f—**

   G.S. 20-71.1 applies only to establish *prima facie* agency in those instances in which the vehicle causing damage is operated by a person other than the owner, and proof that the vehicle, driven by the wife, was registered in the name of the husband and wife or survivor, does not tend to establish that the wife was driving as agent of the husband, since the statute can have no application where the operator of the vehicle is the owner as shown by the registration.

2. **Automobiles § 55—**

   Where the husband is sought to be held liable under the family purpose doctrine for the alleged negligent operation of a vehicle by his wife, the uncontradictory evidence to the effect that the vehicle was registered in the name of the husband and wife or survivor, that the wife alone negotiated the purchase and made the initial and installment payments out of her separate funds, earned in her separate employment, and that the husband had no control or supervision of the operation of the vehicle by his wife, justifies peremptory instructions in his favor on the question.

**3. Trial § 32—**

Request for peremptory instructions should be in writing.

**4. Automobiles § 41c— Evidence held for jury on defendant's counterclaim alleging negligence of plaintiff in failing to keep proper lookout.**

Defendant's allegations and evidence on his counterclaim tended to show that his intestate, operating her vehicle in a westerly direction, had stopped, with the vehicle standing entirely in the northern half of a street and turned on her signals indicating her intention of turning left into the parking area of a store on the south side of the street, that plaintiff, traveling east on his motorcycle at an excessive speed, failed to keep a proper lookout and was heading directly into the stationary vehicle, and that when plaintiff again looked to the front he attempted to stop but lost control and crashed into the front end of the automobile. *Held:* Nonsuit on defendant's counterclaim was erroneously entered.

APPEAL by defendants from *Preyer, J.,* at March 17, 1958 Regular Civil Term of IREDELL— docketed and argued as No. 384 at the Fall Term 1958 of this Court.

Civil action to recover for personal injury and property damage allegedly sustained by plaintiff in a collision 21 May, 1957, between his motorcycle and a Dodge automobile operated by Lorene Kerr Albea which was registered jointly in the name of Lorene Kerr Albea and Clyde M. Albea or survivor, at a point on West Front Street, known also as Taylorsville Road, in Statesville, North Carolina.

Plaintiff, a resident of Iredell County, instituted this action on 9 December, 1957, against defendant Clyde W. Albea, both individually and as executor of the estate of his wife, Lorene Kerr Albea.

Plaintiff alleges in his complaint, among other things:

"III. That at all times mentioned in this complaint, Clyde W. Albea and his wife, Lorene Kerr Albea, were the owners of a certain 1956 4-door Dodge automobile, vehicle registration No. 1957-YW 4251 N. C. Motor No. 3989188A; that said Dodge automobile was owned and kept and maintained by the defendant Clyde W. Albea and his wife, Lorene Kerr Albea, for the use, comfort and convenience of their family, and more particularly for their own use; that said automobile was owned, used and maintained for and by the defendants as a family purpose automobile; that at all times herein mentioned said 1956 Dodge automobile was being operated and driven by the said Lorene Kerr Albea as a family purpose automobile and within the scope and purpose for which it was owned, kept and maintained.

"IV. That on the 21st day of May, 1957, at or around 7:15 P. M., plaintiff was operating his * * * motorcycle in an easterly direction

along West Front Street in the city of Statesville, North Carolina, at or near a business establishment known and referred to as 'Smith's Superette', and that Lorene Kerr Albea at about the same time was operating the said 1956 Dodge automobile, owned by her and her said husband, in a westerly direction over and along West Front Street * * * at or near the said 'Smith's Superette'; that the motor vehicle owned and operated by Lorene Kerr Albea struck and hit the said * * * motorcycle * * * causing the damages and injuries to the plaintiff herein complained of; that the aforementioned Smith 'Superette' is located on the south side of West Front Street; that West Front Street in the city of Statesville runs in a general east-west direction, and that at a point where the said 1956 Dodge automobile being operated by the said Lorene Kerr Albea struck the plaintiff's motorcycle, West Front Street is straight for a considerable distance both east and west at Smith's 'Superette'."

And upon trial in Superior Court plaintiff offered in evidence a certificate of title of motor vehicle as plaintiff's Exhibit #1, and the parties stipulated that this is the certificate of title of the motor vehicle operated by Mrs. Clyde W. Albea on the occasion of the accident on 21 May, 1957, and that the automobile is registered in conformity with the certificate of title with the North Carolina Department of Motor Vehicles, bearing notation, among other data, (1) these words "Clyde William Albea, Sr., and Lorene Kerr Albea, or survivor" and (2) "1st lien in favor Wilkes Auto Sales, Inc.,—paid date 10-7-57." Signed "Wilkes Auto Sales, Inc., by W. A. Absher."

Defendants, answering, deny the allegations contained in paragraphs III and IV of the complaint, except as admitted in defendant's further answer and defense.

And for further answer and defense thereto defendants aver:

"4. That the 1956 4-door Dodge automobile referred to in the complaint was purchased by Lorene Kerr Albea with her own funds; that she was in fact the owner of said automobile and was paying for said automobile out of her own separate earnings; that the certificate of title was registered in the name of Clyde William Albea, Sr., and Lorene Kerr Albea OR SURVIVOR with the Department of Motor Vehicles, State of North Carolina; that it was so registered only for the purpose of providing survivorship rights in said automobile; that if in law the registered owners were joint owners each being vested with the title subject to survivorship to the other, each had full enjoyment of the use of said automobile independent of the authority, consent, or control of the other; that no relation of agency whatsoever was involved or existed between the joint owners, but each was

free and had the right to use the automobile for his or her own particular purposes; that the said automobile was not in fact the property of the defendant Clyde W. Albea by reason of the facts aforesaid, and on the occasion alleged in the complaint was not being operated under his direction, or control, or with his consent, or in any manner so as to constitute the operator thereof as his agent; that the said Clyde W. Albea owned a 1947 Chrysler automobile which he used for his purposes, and the 1956 Dodge automobile was used by defendant operator for her purposes, each using the said automobile free and clear of the consent, authority and control of the other. It is specifically alleged that the family purpose doctrine would have no application to the automobile, or its owners, for the reasons stated herein."

"12. That the defendant operator, at the time of and prior to the accident and subsequent injuries, was a life insurance agent for the Reserve Life Insurance Company and had an earning capacity of approximately $100.00 per week * * * ."

And upon trial in Superior Court defendants offered evidence in this respect substantially as follows:

The witness W. O. Absher testified: "I live in North Wilkesboro and am in the automobile business. Our dealership sold Mrs. Albea a new car in 1956, and I handled the transaction. I recognize this certificate of title from the Department of Motor Vehicles. I sold Mrs. Albea a 1956 Dodge Sedan. This title certificate is in the name of 'Clyde W. Albea and Lorene Kerr Albea, or survivor'. Mrs. Albea bought the car from us and made the down payment and we financed the balance of the indebtedness with Wachovia Trust Company in Winston-Salem. She bargained for the automobile. Our salesman handled the deal, the actual selling, and when the deal was consummated I worked it out in the office. Mr. Ruth handled the deal with Mrs. Albea. I did not at any time suggest to Mrs. Albea how this automobile should be titled."

The witness Claude H. Ruth testified: " * * * I had occasion to sell to Mrs. Clyde Albea an automobile * * * during the first days of August 1956 * * *; it was a new Dodge 4-door sedan. That is the title to it there. I entered into negotiation with Mrs. Albea for that automobile. Mrs. Albea was the one who paid for the automobile. Mrs. Albea was the one who used the automobile. Mr. Albea did not have anything to do with the negotiations, purchase or sale of the automobile." And, on cross-examination, this witness continued: "I know the car that was sold to her and I saw her using it * * * Her husband was with her twice when I saw her * * * ."

The defendant Clyde Albea testified: "I was married to Lorene Kerr Albea, who was 54 years of age. We had been married 38 years. The car named in the certificate of title introduced into evidence was Mrs. Albea's car individually. She bought the car from Wilkes Auto Sales; she paid for it herself. She had the title put that way under the joint names of Lorene Kerr Albea and Clyde W. Albea, Sr., or survivor. I did not ever use this car, only when I went with her to church on Sunday. I have a car, a 1947 Chrysler. I paid for the Chrysler. I had absolutely no control or exercise of dominion over the use of the Dodge automobile. Mrs. Albea was a saleslady for Reserve Life Insurance Company and she used it for that business herself. She worked and made the money which paid for her car. I did not make any payments on it."

Then on cross-examination Mr. Albea continued: "We have three children and I visited them. I went to church in her car. Sometimes I drove it and sometimes she drove it. I have used the car to go visit the children. When she went up to get the car, I went with her. I didn't know how the title was being drawn up. I knew when it got back from Raleigh. I have driven the car when my wife was not with me. I didn't have any use for driving her car for I drove my own car in my business. My wife drove my car very seldom; it was too heavy and I didn't let her drive it much; she did drive it occasionally. I was not with her when the accident happened, I was a patient at Davis Hospital. My wife used her car to go buy groceries at Smith's; she traded there. She was going to Smith's when she left the hospital at about 6:30. She used her car to go buy groceries and for her own use. We lived together and ate the same groceries, but I was in the hospital at the time. We had a joint checking account, and we both put money in the account and we both used the money. She did not issue a check for the down payment on the car; she paid cash. As to the monthly payments, she always had the money because she always carried a fair amount. She always sent it in by check which was on the joint account. She always used the car to buy groceries. I very seldom bought groceries. I never used her car to buy groceries. I never used her car to go to work. I used my car in my own business and didn't need hers. We took trips together in her car; we didn't take any long trips; I think we went to the mountains once that year. She drove part of the time and I drove part of the time. Nobody else went, just her and I, about two weeks before the accident. We went up and spent the day and had picnic lunch. On a rainy Sunday, if she had her car cleaned up, I would drive my own car to keep hers from getting dirty."

And plaintiff in respect to the collision alleged in his complaint:

"V. That immediately before the Albea automobile struck the plaintiff's motorcycle * * * the plaintiff * * * proceeding over and along West Front Street in an easterly direction and * * * approaching the point * * * observed the automobile being operated by Lorene Kerr Albea standing in the northern lane of West Front Street at a point immediately across from the driveway that enters Smith's Superette, and * * * observed that the turn signals on the Albea automobile were turned on and were indicating that Mrs. Albea intended to turn the Dodge automobile to her left to cross the southern lane of West Front Street and enter the driveway approaching Smith's Superette; that as the plaintiff approached, he decreased the speed of the motorcycle * * * in order to be sure that Mrs. Albea was not going to turn to her left immediately in front of him; that after observing that said automobile was motionless and that the operator of said automobile was not turning, the plaintiff proceeded along West Front Street at a prudent and reasonable rate of speed and at all times kept the vehicle which he was operating under proper control; that just as the plaintiff reached the point where he was about to pass the automobile that Mrs. Albea was driving, she * * * began to turn her automobile to the left into the southern lane of West Front Street over which the plaintiff was proceeding as aforesaid * * * that Mrs. Albea continued to drive * * * directly toward plaintiff without turning to either side * * * or without decreasing the speed of said automobile until the Albea automobile struck the plaintiff's motorcycle causing the damages and injuries herein complained of."

And plaintiff further alleges, as acts of negligence proximately causing his injury and damage, that Lorene Kerr Albea, negligently and unlawfully, "(a) * * * failed to yield to the plaintiff the right of way to the southern lane of West Front Street; (b) * * * operated said Dodge automobile at an excessive and unlawful rate of speed under the circumstances then and there existing; (c) * * * failed to keep the motor vehicle which she was operating under proper control so as to avoid striking and running into the plaintiff and the motorcycle which he was operating; (d) * * * failed to keep a proper lookout for other persons and vehicles using the public streets and that she specifically failed to keep a proper lookout for the plaintiff and the motorcycle which he was operating; (e) * * * failed to apply the brakes to the automobile which she was operating so as to stop and keep from striking and running into the plaintiff and the motorcycle which he was operating." And that as a result thereof plaintiff sus-

tained personal injury and property damage as alleged for which he prays judgment.

On the other hand, defendant, individually and as executor aforesaid, answering, denies in material aspect the various allegations of the complaint except as admitted in defendant's further answer and defense, and for a further answer and defense, and alleging new matter to establish contributory negligence, and set out a counterclaim, defendant in so far as pertinent to this appeal avers and says: That the true facts concerning the matters and events which occurred upon the occasion when the plaintiff was injured on the 21st day of May, 1957, are as follows and not otherwise: "1. * * *

"2. That hereinafter * * * Mrs. Lorene Kerr Albea * * * (is) referred to * * * as 'defendant operator' and Clyde W. Albea * * * 'defendant as administrator and individually.'

"3. That the point of the collision * * * is situated approximately 35 feet east of the intersection of Park Drive and the Taylorsville Road; that businesses adjoin the said road on each side and the area constitutes a business district * * * as defined in * * * General Statutes, Section 20-38A; that approximately 150 feet to the west * * * is the crest of a hill; that the width of * * * Taylorsville Road is approximately 36 feet."

"4. (Here repeat paragraph 4 of defendant's further answer and defense hereinabove set forth.)

"5. That defendant, as administrator and individually, is informed and believes that on the 21st day of May, 1957, at or about 7:00 P. M., defendant operator was operating her 1956 4-door Dodge * * * in a westerly direction over and along West Front Street (also known as Taylorsville Road) * * * in a reasonable and prudent manner in the right or northern lane * * *; that as * * * (she) * * * approached the east entrance to Smith's Superette, she slowed her automobile by applying brakes and turned on her left-hand turn signal as provided by law to signal her intention to make a left turn into the entrance to the parking area located in front of Smith's Superette; that immediately before defendant operator arrived at a point opposite the entrance of said parking lot * * * defendant, as administrator and individually, is advised and believes, and so alleges, that defendant operator first observed plaintiff approaching over the crest of a hill and traveling in his lane of travel in an easterly direction on his * * * motorcycle, which he was operating at a high and dangerous rate of speed toward the point wherein defendant operator was intending to turn; that defendant operator * * * stopped her automobile completely in the

northern or her right-hand lane immediately across from the east driveway * * * in order to allow plaintiff's vehicle to pass in the southern lane * * * ; that as the plaintiff approached * * * he suddenly turned his head, and looked in another direction, away from his front * * * ; that plaintiff continued traveling at said high and reckless rate of speed and when he again looked to his front he was heading directly toward the vehicle driven by defendant operator; that then plaintiff attempted to stop his vehicle, but lost control and crashed into the front end of the automobile driven by defendant operator, which was standing still waiting for plaintiff to pass; that as a result * * * (thereof) the defendant operator was injured, and the automobile she was driving was badly damaged.

"6. * * * that at all times hereinabove and hereinafter alleged, the plaintiff had a clear, wide, unobstructed lane of travel in which to properly pass the defendant operator's vehicle, but the plaintiff negligently lost control of his vehicle, crashing into the car operated by defendant operator, while said vehicle was in its proper lane.

"7. That the above described accident was caused by the sole * * * negligence of the plaintiff; that if the defendant operator was guilty of any negligence, which is expressly denied, then the carelessness, negligence and unlawful acts of plaintiff, as aforesaid constitute contributory negligence on his part, and said * * * conduct is hereby pleaded as contributory negligence and in complete bar to any recovery by the plaintiff against said defendant."

And as acts of negligence on the part of plaintiff, defendant specifies failure to keep a proper lookout, reckless driving, failure to keep control, failure to drive in his lane of traffic, inadequate brakes or failure to use them, and failure to yield to defendant operator in her lane of travel.

And defendant further avers and says that as a result of the negligence of plaintiff (a) the defendant operator's automobile was damaged in the amount of $400, and (b) she received serious internal injuries to her kidneys, and other internal organs, and suffered great mental and physical pain, to her damage, all as set forth; and that as a direct and proximate result of such injuries by negligent acts of plaintiff she died on September 17, 1957— resulting in damage to her estate.

And pursuant thereto defendant prays judgment, *inter alia,* that plaintiff recover nothing of him, individually or representatively, and that defendant as administrator of the estate of Lorene Kerr Albea recover damages in specified sum.

Plaintiff replying denies material averments of the further answer and counterclaim of defendants.

And upon the calling of the case for trial the parties stipulated that while the counterclaim setting out a cause of action for personal injuries and a cause of action for wrongful death are not separately stated, it is agreed that this defect in the pleadings is waived by the plaintiff without the necessity of an amendment to the pleadings.

And, upon the trial in Superior Court, plaintiff, as witness for himself, testified and offered testimony of others tending to support his version of the circumstances attending the happening of the collision, details of which appear in record of statement of case on appeal.

And, also, upon the trial defendant, as administrator and individually, through cross-examination of plaintiff's witnesses and testimony of his witnesses offered testimony tending to support the averments of his plea of contributory negligence, and counterclaim, details of which are set out extensively in the record of case on appeal.

At the close of the evidence motion of defendant for judgment as of nonsuit was denied. But motion of plaintiff for judgment as of nonsuit as to defendant's counterclaim was granted. Exception #8.

The case was thereupon submitted to the jury under charge of the court, on these issues which were answered by the jury as indicated:

"1. Was the plaintiff Glenn H. Fox injured and damaged by the negligence of the defendant operator Mrs. Lorene Kerr Albea, as alleged in the complaint? Answer: Yes.

"2. Did the plaintiff Glenn H. Fox, by his own negligence, contribute to his injury and damage, as alleged in the Answer? Answer: No.

"3. Was Mrs. Lorene Kerr Albea operating the 1956 Dodge automobile as agent of the defendant Clyde W. Albea and acting within the scope of her authority, as alleged in the complaint? Answer: Yes.

"4. What amount, if any, is the plaintiff entitled to recover of the defendant for his personal injuries? Answer: $29,350.00.

"5. What amount, if any, is plaintiff entitled to recover of the defendant for damage to his motorcycle? Answer: $650.00."

And to the signing of judgment entered in accordance therewith defendant excepts and appeals to Supreme Court and assigns error.

*R. A. Hedrick, Baxter H. Finch for plaintiff, appellee.*

*Scott, Collier and Nash, Jack R. Harris, Smith, Moore, Smith, Schell & Hunter, Stephen Milliken for defendant, appellant.*

WINBORNE, C. J. While defendant concedes that there is sufficient

evidence of negligence on the part of Mrs. Albea to take the plaintiff's case to the jury, and to sustain a verdict against her estate, the defendant individually, Clyde W. Albea, contends that there is not sufficient evidence in any aspect to make a *prima facie* case of liability against him for her acts. He challenges, and we hold properly so, the charge of the court applying the provisions of G.S. 20-71.1 and the family purpose doctrine.

In this connection the record of case on appeal discloses that the only evidence offered by plaintiff, in respect to G.S. 20-71.1 is the certificate of title of the automobile driven by Mrs. Albea at the time of the collision here involved showing registration in the names of "Clyde William Albea, Sr., and Lorene Kerr Albea, or survivor." By this means plaintiff invokes the provisions of the statute to make out a *prima facie* case of agency as between Mrs. Albea and Clyde William Albea, her husband, to hold him liable for her acts in the operation of the said automobile.

G.S. 20-71.1 is a codification of Chapter 494 of Session Laws 1951 entitled "An Act to Provide New Rules of Evidence in Regard to the Agency of the Operator of a Motor Vehicle Involved in Any Accident."

It reads in pertinent part as follows: "(a) In all actions to recover damages for injury to the person or to property or for the death of a person, arising out of an accident or collision involving a motor vehicle, proof of ownership of such motor vehicle at the time of such accident or collision shall be *prima facie* evidence that said motor vehicle was being operated and used with the authority, consent and knowledge of the owner in the very transaction out of which such injury or cause of action arose. (b) Proof of the registration of a motor vehicle in the name of any person, firm, or corporation shall for the purpose of any such action, be *prima facie* evidence of ownership and that such motor vehicle was then being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment * * *." This statute, as declared by this Court in *Hartley v. Smith*, 239 N.C. 170, 79 S.E. 2d 767, in opinion by *Barnhill, J., later C. J.,* is "designed to create a rule of evidence. Its purpose is to establish a ready means of proving agency in any case where it is charged that the negligence of a nonowner operator causes damage to the property or injury to the person of another. * * * It does not have, and was not intended to have, any other or further force or effect."

And the case of *Travis v. Duckworth*, 237 N.C. 471, 75 S.E. 2d 309,

is cited in approval. To like effect are *Roberts v. Hill*, 240 N.C. 373, 82 S.E. 2d 373, and *Osborne v. Gilreath*, 241 N.C. 685, 86 S.E. 2d 462.

In the *Roberts* case, *supra*, this Court in opinion by *Barnhill, C. J.*, had this to say: "A careful consideration of the original Act * * * including its caption, leads us to the conclusion that it was designed and intended to apply, and does apply, only in those cases where the plaintiff seeks to hold an owner liable for the negligence of a non-owner operator under the doctrine of *respondeat superior*. 'Its purpose is to establish a ready means of proving agency in any case where it is charged that the negligence of a nonowner operator causes damage to the property or injury to the person of another. *Travis v. Duckworth*, 237 N.C. 471, 75 S.E. 2d 309. It does not and was not intended to have any other force or effect.' *Hartley v. Smith*, 239 N.C. 170. (Emphasis added) This language appearing in the *Hartley* case was used advisedly. We adhere to what is there said."

Further, in the *Osborne* case, *supra*, this Court in opinion by *Parker, J.*, in disposing of an unacceptable contention, said: "To adopt plaintiff's view would require us to overrule what was said by *Barnhill, J.*, in speaking for a unanimous court in *Hartley v. Smith, supra*, and by *Barnhill, C. J.*, for a unanimous Court in *Roberts v. Hill, supra*." Then what is said in this respect in *Hartley v. Smith, supra*, and in *Roberts v. Hill, supra*, concluded by saying: "We adhere to what was said in the excerpts from those two cases quoted above."

Now the Court adheres to what is there said.

And applying this provision to the case in hand, it is seen that the operator of the automobile in question, if the ownership be as reflected by the registration, is the owner, and the provisions of G.S. 20-71.1 are inapplicable. Hence the charge applying them to case in hand is erroneous and constitutes error for which a new trial must be had.

Furthermore the plaintiff having alleged the existence of factual situation tending to bring the case under family purpose doctrine, and defendant having denied these allegations, and offered evidence contradicting same as to agency, "such evidence may warrant a peremptory instruction based thereon, but not a judgment of nonsuit." See *Davis v. Lawrence*, 242 N.C. 496, 87 S.E. 2d 915.

In this connection, while the record of case on appeal in instant case shows exception #12, assignment of error #7, to the failure of the trial court to give peremptory instruction, the record does not show written request therefor. See McIntosh N.C. P & P, W & W, Vol. 2, Sec. 1517.

Lastly, the appellant assigns as error the granting of motion of

plaintiff, aptly made, for judgment as of nonsuit of cause of action on counterclaim set up by defendant.

Bearing in mind that defendant avers in the further answer and counterclaim a cause of action for actionable negligence proximately causing damage in three phases (1) for damage to automobile, (2) for physical pain and suffering after accident and prior to death, and (3) for wrongful death, upon the trial he offered evidence susceptible of supporting inference.

Therefore exception to the granting of the nonsuit on the counterclaim is well taken.

Hence the judgments entered upon trial below are set aside, and a new trial ordered.

New Trial.